**HELFGOTT & KARAS, P.C., Plaintiff,**

v.

**Bruce A. LEHMAN, Assistant Secretary of Commerce, and Commissioner of Patents and Trademarks, Defendant.**

No. 98 Civ. 4014 SAS.

United States District Court,
S.D. New York.

Dec. 23, 1998.

Aaron B. Karas, Michael F. Sarney, Helfgott & Karas, P.C., New York City, for Plaintiff.

Martin J. Siegel, Assistant United States Attorney, New York City, for Defendant.

## OPINION AND ORDER

SCHEINDLIN, District Judge.

Presently before this Court are cross motions for summary judgment filed by plaintiff Helfgott & Karas, P.C., a law firm ("plaintiff"), and Bruce A. Lehman, Assistant Secretary of Commerce and Commissioner of Patents and Trademarks (the "Commissioner"). At issue is whether the Patent and Trademark Office (the "PTO") acted arbitrarily and capriciously in denying plaintiff's petition to reinstate its application for an international patent under the Patent Cooperation Treaty (the "Treaty" or "PCT"). Because the scope of this Court's review is narrow and deferential, and the Court cannot substitute its judgment for that of the PTO, summary judgment is granted to the Commissioner.

### I. Standard of Review

Plaintiff brings this action under the Administrative Procedure Act, 5 U.S.C. §§ 702–06 (the "APA"), which provides for judicial review of final agency decisions. See, e.g., Ray v. Lehman, 55 F.3d 606, 608 (Fed.Cir.1995) (APA review of PTO's rejection of late payment of patent fees).[1]

■ The PTO's decision to reject plaintiff's Petition will be set aside only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); see Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 413–14, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). "An agency rule may be deemed arbitrary, capricious or an abuse of discretion 'if the agency has relied on factors which Congress has not intend-

ed it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'" Henley v. Food and Drug Admin., 77 F.3d 616, 620 (2d Cir.1996) (citing Motor Vehicle Mfrs. Assoc., of the United States v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983)). "[T]he scope of judicial review under this standard is narrow and deferential" and a "reviewing court cannot 'substitute its judgment for that of the agency.'" Id. (citing Citizens to Preserve Overton Park, 401 U.S. at 416, 91 S.Ct. 814). The agency must "examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" Motor Vehicle Mfrs. Ass'n, 463 U.S. at 43, 103 S.Ct. 2856 (citation omitted); accord Henley, 77 F.3d at 620.[2]

■ Moreover, courts defer to agency constructions of the statutes they administer. Linea Area Nacional de Chile S.A. v. Meissner, 65 F.3d 1034, 1039 (2d Cir.1995).

> In the specialized field of patent law ... the Commissioner of Patent and Trademarks is primarily responsible for the application and enforcement of the various narrow and technical statutory and regulatory provisions. His interpretation of these provisions is entitled to considerable deference.

Rydeen v. Quigg, 748 F.Supp. 900, 904 (D.D.C.1990), aff'd mem., 937 F.2d 623 (Fed.Cir.1991); see also Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 843, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) ("if the statute is

---

**1.** The February 18, 1998 Decision of the PTO states that it may be viewed as a final agency decision.

**2.** The Commissioner argues that because a reviewing court may only examine the record compiled by the agency, this Court should strike all material plaintiff appended to its complaint and in support of this motion. Because all relevant documents and evidence contained within plaintiff's submissions are also contained within the PTO record, the Commissioner's application is denied.

silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute").

## II. Factual Background

The facts underlying this motion are not in dispute.

### A. *Patent Cooperation Treaty*

Under the Treaty, inventors may obtain patents in multiple countries by submitting an "international application" to the prescribed "receiving office" in a nation who is a member of the Treaty. PCT, June 19, 1970, Articles ("art") 3–4, 10. In the United States, the PTO is the receiving office for international applications. *See* 35 U.S.C. § 361. Upon receiving an international application, a receiving office "accord[s] as the international filing date the date of receipt of the international application." *Id.*, art. 11. If the applicant has already requested patent protection in a member nation, the applicant may "claim priority" over rival inventors back to the date of the earlier application. *See id.*, art 8.

Following receipt of an international application, the patent authority in the receiving nation performs an international search for "relevant prior art" and generates an international search report on the results. *See id.*, art. 15–16, 18. The applicant must then transmit the international application to individual nations where patents are sought within twenty months of the applicable priority date. *See id.*, art 22. Alternatively, the applicant may demand preparation of an "international preliminary examination," which offers "a preliminary and non-binding opinion on the questions" governing patentability. *Id.*, art 31–33. If the applicant demands an international preliminary examination at any time before the expiration of the nineteenth month from the priority date, transmission of the international application to individual nations for processing may be delayed an extra ten months, extending the time limitation within which to transmit patent applications to thirty months after the priority date. *See id.*, art. 39.

### B. *Plaintiff's International Applications*

On March 22, 1996, plaintiff filed an international application seeking protection for an invention it titled "fluid actuated chuck" (the " '856 Application"). *See* Administrative Record of International Application Number PCT/US 96/03856 (the " '856 Record") at 4–8. The PTO assigned international application number PCT/US 96/03856 to the '856 Application. *See id.* at 4. The '856 Application listed plaintiff as the applicant and also listed two further applicants and/or inventors: R.S.R. Adtec Ltd. and Dov Sheffer. *See id.* at 4–5. In the '856 Application, plaintiff claimed a priority date of March 22, 1995 for the invention, based on an application submitted on that date in Israel. *See id.* at 8. In addition, in the box on the application that enables an applicant to provide its own (or its agent's) "file reference" number "if desired," plaintiff listed "COLB13401PCT." *See id.* at 4.

Five days after filing the '856 Application, on March 27, 1996, plaintiff submitted a second international application for an invention entitled "three dimensional puzzle" (the " '218 Application"). *See* Administrative Record of International Application Number PCT/US 96/04218 (the " '218 Record") at 9–12. The PTO assigned international application number PCT/US 96/04218 to the '218 Application. *See id.* at 9. Like the '856 Application, the '218 Application listed plaintiff as the applicant, and it also listed a further applicant named Yosef Eizenthal. *See id.* Plaintiff claimed a priority date of March 30, 1995, based upon a prior filing in Israel. *See id.* at 12. Plaintiff assigned "COLB13408PCT" as its file reference number for the '218 Application.

On October 21, 1996, plaintiff filed a demand for an international preliminary examination (the "Demand"). *See id.* at 5–

7. Box I of the Demand, titled "Identification of the International Application," requires five pieces of information identifying the application to which the Demand refers: (1) the international application number; (2) the international filing date; (3) the priority date; (4) the applicant's (or his agent's) file reference number and (5) the title of the invention. As to items (1) through (3), plaintiff erroneously entered information relating to the '218 Application, rather than the '856 Application.[3] As to items (4) and (5), plaintiff properly listed the information corresponding to the '856 Application. In Box II of the Demand, which requires information about the applicants, plaintiff listed itself—the applicant in the '218 and the '856 applications—and the further applicants for the '856 Application.

On the basis of the information in the Demand, the PTO determined that plaintiff intended the Demand to request an international preliminary examination for the '218 Application, rather than the '856 Application. *See* '856 Record at 100–01, 134–35. Because there were inconsistencies in the Demand, however, the PTO sent to plaintiff an "Invitation to Correct Defects in the Demand" (the "Invitation"), pursuant to PCT Rule 60.1, on November 21, 1996. *See* '218 Record at 34–35.

In the Invitation, the PTO listed the international identification number of the '218 Application, as it had been listed on the Demand. The PTO noticed that the file reference number on the Demand did not correspond to the '218 Application. Believing, however, that plaintiff had intended the Demand to refer to the '218 Application and had made a typographical error—the file reference number for the '218 Application and the '856 Application differed by only one digit—the PTO listed the file reference number of the '218 Application on the Invitation. *See id.* at

34. The Invitation specified two errors in the Demand requiring clarification—the title of the invention and the names of the further applicants—as plaintiff had listed information relating to the '856 Application for these categories in what the PTO believed to be a Demand relating to the '218 Application.

Upon receiving the Invitation and seeing that it bore the file reference number for the '218 Application, plaintiff's agent placed the Invitation in its files for the '218 Application. Because the '218 Application had been abandoned pursuant to the directions of plaintiff's client in October 1996, plaintiff's agent did not review the Invitation any further and did not respond to it within the one-month reply period specified on the Invitation. *See* '856 Record at 107–08; '218 Record at 34. The agent did not realize that plaintiff had never intended to file a Demand for the '218 Application and so should not have received any Invitation relating to that application.

On November 21, 1996, the PTO also mailed to plaintiff a form entitled "Notification of Receipt of Demand" (the "Notification"), informing plaintiff that the PTO had received the Demand on October 21, 1996. *See id.* at 53–54. Like the Invitation, the Notification listed the international application number and the file reference number for the '218 Application. The record does not reflect what action plaintiff took upon receiving the Notification, but it presumably placed this document into the file for the '218 Application without review, as it had done with the Invitation.

Although it did not receive a response from plaintiff to the Invitation, on March 10, 1997, the PTO completed a Written Opinion respecting the patentability of the invention at issue in the '218 Application. *See id.* at 45–48. The PTO also prepared an International Preliminary Examination

---

**3.** Plaintiff claims that these three pieces of information were entered incorrectly on the Demand because its agent had inadvertently placed a document pertaining to the '218

Application in its file pertaining to the '856 Application. *See* Memorandum of Points and Authorities in Support of Plaintiff's Motion for Summary Judgment ("Pl.'s Mem.") at 4.

Report as to the '218 Application on June 6, 1998. *See id.* at 37–39. These documents indicate that they were transmitted to plaintiff, and plaintiff does not contest their receipt. *See id.* at 41; 45.

### C. *Plaintiff's Petition and the PTO's Decisions*

Some time around September 17, 1997, plaintiff realized that the 30–month period after which the '856 Application would have to be transmitted to foreign nations would expire on September 22, 1997, and it believed that the PTO had not yet acted on the '856 Application. Pl.'s Mem. at 6. Plaintiff thus filed a petition (the "Petition") requesting expedited consideration of the Application and the Demand and explaining for the first time the Demand's erroneous inclusion of information relating to the '218 Application. *See* '856 Record at 146–49.

In a decision issued on September 30, 1997, the PTO dismissed plaintiff's Petition under 37 C.F.R. § 1.181(f), which specifies that any "petition not filed within two months from the action complained of, may be dismissed as untimely." *See id.* at 144–45. Because plaintiff had been notified on November 21, 1996 that defects existed in the Demand but had taken no action until the September 17, 1997 Petition—nearly ten months later—it was the PTO's position that plaintiff had failed to comply with § 1.181(f). *See id.* The PTO's denial of the Petition had the effect of terminating the '856 Application. According to plaintiff, the result of this termination is that the applicants will not be able to obtain the benefit of patent filings in a number of the countries specified in the Demand. *See* Pl.'s Mem. at 6.

In correspondence with the PTO, plaintiff requested that it reconsider its denial of the Petition. *See id.* at 139–141. In a

decision issued on December 22, 1997, the PTO declined to disturb its initial decision and rejected plaintiff's arguments that the PTO should have treated the Demand as applying to the '856 Application. *See id.* at 124–126.

On January 7, 1997, plaintiff filed a Request for Reconsideration on Decision on Petition, arguing that the PTO relied on the wrong identifying information in the Demand. *See id.* at 104–111. The PTO upheld its initial determination in a decision dated February 18, 1998. *See id.* at 98–103. Plaintiff then sent a letter to the PTO on March 20, 1998, requesting reconsideration of the decision on the ground that the PTO failed to take into consideration PCT Rule 60.1(c) and to properly apply PCT Rule 91. *See id.* at 86–88. In a decision dated April 2, 1998, the PTO denied this request. *See id.* at 82–85. Finally, on April 21, 1998, plaintiff filed a Further Request for Reconsideration, arguing that the PTO's unauthorized use of the file reference number corresponding to the '218 Application on the Invitation caused plaintiff's failure to respond to the Invitation. *See id.* at 79–81. The PTO rejected this request in a decision dated June 11, 1998. *See id.* at 76–78. Plaintiff then brought the current action.

## III. Discussion

### A. *37 C.F.R. § 1.183*

■ The PTO rejected plaintiff's Petition to correct the Demand as untimely under 37 C.F.R. § 1.181(f), which requires that a Petition be filed "within two months from the action complained of." Plaintiff argues that the PTO, in the exercise of its discretion, should have waived the two-month requirement in the interest of justice pursuant to 37 C.F.R. § 1.183.[4]

---

4. 37 C.F.R. § 1.181(a) sets forth the circumstances under which a petition may be taken to the Commissioner; sections 1.181(b) through (g) set forth procedural requirements relating to petitions. Section 1.182 states that "[a]ll cases not specifically provided for

in the regulations of this part will be decided in accordance with the merits of each case by or under the authority of the Commissioner, and such decision will be communicated to the interested parties in writing. Any petition seeking a decision under this section must be

Section 1.183 provides that "[i]n an extraordinary situation, when justice requires, any requirement of the regulations in this part which is not a requirement of the statutes may be suspended or waived by the Commissioner . . . on petition of the interested party." Section 1.183 thus provides the PTO with the discretion to waive a requirement of the regulations when it believes that a situation is "extraordinary" and that such waiver is in the interest of "justice." *See also Issidorides v. Ley*, 4 U.S.P.Q.2d 1861, 1985 WL 71770 (Com'r Pat. & Trademearks 1985) ("[i]t is not the policy of the Patent and Trademark Office . . . to routinely waive rules").

Plaintiff argues that because the arbitrary acts of the PTO necessitated the filing of the Petition, the PTO should have accepted the Petition although it was filed beyond the two-month period. Plaintiff points to two acts of the PTO it contends were arbitrary. First, plaintiff argues that the PTO's initial determination that the Demand referred to the '218 Application, rather than the '856 Application, was arbitrary because there was sufficient information set forth in the Demand to indicate that it was intended for either the '856 or the '218 Application. Second, it argues that the PTO's act of changing the file reference number on the Invitation caused plaintiff to misfile the Invitation and, therefore, was the proximate cause of plaintiff's failure to respond to the Invitation in a timely manner.

Plaintiff contends that because the title of the invention and the names of the other applicants listed on the Demand did not correspond to the '218 Application, the PTO should have realized it contained an error. Plaintiff argues that the PTO should have checked which application the file reference number actually referred to, or alerted plaintiff that there was conflicting information, and given the agent the opportunity to determine which information was correct, rather than assuming that the file reference number listed on the Demand was a typographical error and listing the '218 Application's file reference number on the Invitation. Because the PTO's act of changing the file reference number caused plaintiff's failure to respond to the Invitation, the situation was "extraordinary" and in the interests of justice, the PTO should have accepted plaintiff's Petition.

The Commissioner, in turn, argues that § 1.183 should not be construed to operate in favor of an applicant whose own errors gave rise to the issue raised by the Petition. In support of this argument, he cites to *Nitto Chemical Ind. Co., Ltd. v. Comer*, 39 U.S.P.Q.2d 1778 (D.D.C.1994). In *Nitto*, plaintiff's law firm intended to file patent applications before a certain date by Express Mail deposit in order to claim priority based on prior foreign applications. Although the firm prepared the applications and the Express Mail packages, the messenger entrusted with depositing the express mail packages failed to do

accompanied by the petition fee set forth in § 1.17(h)." The PTO treated plaintiff's Petition as one under 37 C.F.R. § 1.182, and it applied § 1.181(f) to that petition, exercising its ability to dismiss any petition not filed within two months as untimely. During argument before this Court, plaintiff argued that the two-month requirement of § 1.181(f) does not apply to petitions under § 1.182, and that petitions under § 1.182 are subject to the more general requirement that they be timely. The Commissioner argued that although §§ 1.181 and 1.182 refer to different kinds of "petitions," the general procedural requirements of § 1.181 apply to all petitions. The Commissioner's interpretation appears to be

correct. Other than the provision relating to fees, § 1.182 provides no procedural guidance. In addition, the other types of issues covered in § 1.181 suggest that they are general requirements meant to apply to all petitions. For example, § 1.181(b) states that petitions must contain a statement of the facts and that where facts are to be proven, they must be contained in affidavits or declarations. Similarly, § 1.181(g) states that the Commissioner may delegate to officials the determination of petitions. In any event, this discussion is somewhat academic, because § 1.181(f) states that petitions "may be dismissed" after two months, placing such dismissal within the PTO's discretion.

so, and the applications failed to reach the PTO. The district court upheld the PTO's denial of plaintiff's Petition under § 1.183 to grant it the intended filing date on the ground that the "circumstances are not extraordinary, and do not require waiver of the rules, when the party attempting to file an application makes an avoidable mistake . . . ." *Id.* at 1782, 1994 WL 872610.

The PTO's initial determination that the Demand referred to the '218 Application was entirely reasonable. In its decision of February 18, 1998, the PTO provided a completely rational explanation for this decision:

> Further, in the Demand itself, Box No. I is titled "IDENTIFICATION OF THE INTERNATIONAL APPLICATION" and it sets forth five items by which the application is to be identified: (1) the International Application No., (2) the International Filing Date, (3) the Priority Date, (4) the Applicant's or Agent's File Reference Number, and (5) the Title of the Invention. A review of the indications in Box No. I of the Demand in question reveals that items (1)—(3) correspond to the proper information for the '218 application, and that the indication for item (4) differs from the reference number for the '218 application by only a single digit which could reasonably be considered a mere typographical error. Additionally, while the following are not indications listed in Box No. I of the Demand for identification of the international application, it is noted that the indication concerning the first named applicant and the agent also correspond to the proper information in the '218 application. Therefore . . . the decision of the IPEA/US to direct the Demand to the '218 Application cannot be interpreted as arbitrary.

'856 Record at 101. Emphasizing the importance that the PTO places upon the international application number, the PTO explained that "the entire purpose for assigning application numbers to applications is to provide a primary indicator for track-

ing of the application and for the matching of correspondence to the proper application file." *Id.* at 100. In further illustration of this point, the PTO noted that 37 C.F.R. § 1.5(a) provides that correspondence with the PTO "*must* identify on the top page in a conspicuous location . . . the international application number." *Id.* The PTO's decision, based upon plaintiff's inclusion of the '218 Application's international application number, as well as other pieces of information referring to that application, was not arbitrary or an abuse of discretion.

■ Plaintiff argues that even if it was reasonable for the PTO to have assumed that the Demand referred to the '218 Application in the first instance, the PTO should have permitted plaintiff to amend the Demand beyond the two-month period specified in § 1.181(f). Plaintiff argues that such amendment should be permitted because the PTO's entry of the file reference number corresponding to the '218 Application on the Invitation prevented plaintiff from correcting the error in a timely manner, because it did not realize that the Invitation pertained to the originally filed Application. Thus, plaintiff argues, the PTO's actions rendered this situation "extraordinary" within the meaning of § 1.183.

I agree that *Nitto*, the case upon which the Commissioner relies, is not directly on point here. In that case, the plaintiff's failure to comply with the applicable rules was the result solely of its law firm's inadvertent error. *See also In re Patent No. 4,366.679*, 7 U.S.P.Q.2d 1740, 1988 WL 252368 (Comm'r Pat. & Trademarks 1988) (patentee failed to submit all relevant information). Here, by contrast, plaintiff caused the initial problem by preparing the Demand with the wrong information. The situation was compounded by the PTO's decision, though reasonable, to enter the file reference number of the '218 Application on the Invitation. This mistake was, in turn, further compounded by plaintiff's failure to review the correspon-

dence from the PTO because it believed that it referred to the '218 Application.

I find, however, that the PTO did not act arbitrarily or capriciously, abuse its discretion, or otherwise contravene the law in refusing to waive the two-month requirement specified in § 1.181(f). The PTO, as it pointed out in its December 22, 1997 decision, sent the Invitation to plaintiff offering it the opportunity to clarify the confusion in the Demand. Because the PTO believed that a Demand for the '218 Application had been filed, the Invitation stated that there were two deficiencies in the Demand—the title of the invention and the name of the other applicant—which was the identifying information on the Demand that did not correspond to the '218 Application. From plaintiff's perspective, these pieces of information were not inconsistencies at all, but were, in fact, two of the three pieces of identifying information on the Demand that were actually correct. Although the Invitation may not have set forth the problems in the Demand in the manner that would have been most helpful to plaintiff, the PTO, recognizing that there were inconsistencies, offered plaintiff the opportunity to clarify them. Even a brief cross checking of the Invitation with the Demand that it referenced would have alerted plaintiff to the initial errors and the source of the confusion. Plaintiff, however, chose to file away the Demand without examination.

In addition to the Invitation, the PTO sent three other pieces of correspondence regarding the Demand to plaintiff: a Notification of Receipt of Demand on November 21, 1996, a Written Opinion on March 10, 1997 and an International Preliminary Examination Report on July 9, 1997. *See id.* at 125. Although these documents, like the Invitation, listed the file reference number for the '218 Application, review of any of them would have alerted plaintiff to the fact that there were errors in the Demand, as plaintiff had abandoned the '218 Application and had never intended to file a Demand for that application.

In light of plaintiff's errors in preparing the Demand and its failure to review the Invitation and the other notices that could have alerted it to the confusion between the '218 and the '856 Applications, the PTO did not act arbitrarily or capriciously, or abuse its discretion, in refusing to accept plaintiff's Petition beyond the two-month requirement of § 1.181(f).[5]

### B. *PCT Rule 60.1*

Plaintiff also argues that the PTO violated PCT Rule 60.1(c) when it conducted the preliminary examination for the '218 Application without receiving a response to the Invitation within the applicable time limit. PCT Rule 60.1 governs the correction of defects in a Demand. Paragraph 60.1(a) provides that if a Demand does not comply with the dictates of the Treaty, the International Preliminary Examining Authority shall invite the applicant to correct the defects. Paragraph 60.1(c) provides that "if the applicant does not comply with the invitation within the time limit under paragraph (a), the demand shall be considered as if it had not been submitted." Under paragraph 60.1(a), the PTO shall invite an applicant to correct defects in a Demand within a "reasonable" time, which cannot be less than one month from the date of the Invitation. Rule 60.1(a) also provides that the PTO may extend the time limit at any time "before a decision is taken." The PTO specified on plaintiff's Invitation that

---

5. Plaintiff argues in its papers that § 1.183 gave the PTO the authority not just to consider the Petition, but to grant the Petition's request that the Demand be accepted for the '856 Application. Section 1.183, however, only grants the PTO the authority to waive a *regulation* "which is not a requirement of the statutes." *Baxter International v. McGaw,* 149 F.3d 1321, 47 U.S.P.Q.2d 1225 (Fed.Cir. 1998). Thus, § 1.183 merely gives the PTO the authority to accept the Petition beyond the two-month period set forth in § 1.181. Even if this Court had held that the PTO abused its discretion in applying § 1.181, plaintiff's request to amend the Demand must still have been consistent with the rules of the Treaty.

it had one month to respond. *See* '218 Record at 34.

Plaintiff argues that because it did not respond to the Invitation, the PTO violated Rule 60.1 when it conducted a preliminary examination of the '218 Application and prepared the Written Opinion and Report for that Application. Plaintiff points out that the PTO held, as one basis for denying its Petition, that because plaintiff had received the benefits of processing in the '218 Application, it was not entitled to those benefits in the '856 Application. *See* '856 Record at 125. Thus, it contends, because the processing of the '218 Application violated Rule 60.1, the PTO's explanation for denying plaintiff's Petition is not in accordance with law and cannot be rational.

The PTO explained its rationale for processing the Demand even though plaintiff did not respond to the Invitation as follows:

> [I]t is PTO practice (and nothing in the Treaty prohibits such practice) for international applications to undergo continued Chapter II processing when defects are noted under Rule 60 while awaiting a response to the notification of defects. This practice allows for timely completion of the preliminary examination by the examining authority while making provision for the time limit for response to the notification of defects to be extended as provided for in the Rule.

*See id.* at 83. Thus, it is the PTO's position that its practice of acting on a Demand even after petitioner's time to respond to an Invitation has passed is consistent with Rule 60.1(c), because that provision incorporates paragraph 60.1(a), which allows the PTO to provide extensions of time for a response. *See* Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgement and in Support of Defendant's Motion for Summary Judgment, at 20.

■ I do not address whether it is appropriate for the PTO to continue processing an application after the time limit for

answering an Invitation has expired, where the PTO contemplates granting extensions of time for correction of defects. In this case, however, the PTO failed to follow some of the requirements of the Treaty. Having granted no extensions of time and having received no response from plaintiff, prior to completion of a Written Opinion and Report, the PTO should have decided that the Demand would be "considered as if it had not been submitted." Pursuant to Rule 61.1(b), the PTO would then have been required to notify plaintiff by sending a form PCT/IPEA/407, which is titled Notification that Demand Considered as Not Having Been Submitted.

Nonetheless, plaintiff was not prejudiced by the PTO's failure to follow the Treaty rules in preparing the Written Report and Opinion and in failing to inform plaintiff that it was not considering the Demand. As the PTO explained, even if it had not prepared those reports for the '218 Application, it still would not have applied the Demand to the '856 Application. *See id.* In that circumstance, the Demand would not have been considered for either application.

Moreover, the PTO also provided an additional rationale for its rejection of the Petition. PCT Rule 60.1(b) provides that where an applicant responds to a Demand within the time limit specified in paragraph 60.1(a), "the demand shall be considered as if it had been received on the actual filing date ... otherwise, the demand shall be considered as if it had been received on the date on which the [PTO] receives the correction." The PTO held that because plaintiff failed to respond within the one-month period specified on the Invitation, even if the Demand is corrected to apply to the '856 Application, the Demand would be considered received on September 17, 1997, the date on which it was corrected. Because that date is more than 19 months from the priority date of the '856 Application—March 22, 1995— plaintiff would still not be entitled to the

extension to 30 months for filing internationally.

Even if the PTO had notified plaintiff under Rule 61.1(b) that the Demand was not being considered because of plaintiff's lack of response to the Invitation, it would not change the result. The PTO sent the Invitation on November 21, 1996 and gave plaintiff one month to respond. Even if the PTO had sent plaintiff the 61.1(b) notice on December 21, 1996 (the earliest possible date), and this notice had caused plaintiff to become aware of the problem and to respond to the Invitation immediately, the Demand would have been considered received on the date it was corrected, and that date would still have been more than 19 months from the priority date of the '856 Application.[6] As a result, plaintiff would not have been entitled to the extra ten months under PCT Article 39 to transmit the Application to foreign nations. Thus, because plaintiff had not transmitted the Application within the twenty-month period under PCT Article 22, the Application would still have been terminated.

Plaintiff argues that Rule 60.1(a) permitted the PTO to grant extensions of time to respond to the Invitation beyond the one-month period. Thus, pursuant to Rule 60.1(a), the PTO could have extended plaintiff's time to respond to the Invitation and then considered the Demand to have been received on the Demand's original filing date. Even if plaintiff's interpretation of the rule is correct, however, the decision whether to grant such an extension rested within the discretion of the PTO. Whether to grant a petitioner an extension of time to comply with rules of a patent treaty appears to be a classic example of a situation in which this Court is not permitted to substitute its judgment for that of the PTO.

The PTO provided a rational explanation for its rejection of the Petition: the De-

mand failed to identify itself as intended for the '856 Application and plaintiff failed to respond to the PTO's Invitation granting it the opportunity to clarify the inconsistencies. *See* '856 Record at 134–36, 102, 83–84. To the extent that the PTO also cited the completion of the reports for the '218 Application as a basis for denying the Petition, this rationale was one among many.

### C. *PCT Rule 91.1*

■ Plaintiff also argues that the PTO failed to properly apply PCT Rule 91.1. Rule 91.1 states that "obvious errors in the international application or other papers submitted by the applicant may be rectified." The rule further provides that

> Errors which are due to the fact that something other than what was obviously intended was written in the international application or other paper shall be regarded as obvious errors. The rectification itself shall be obvious in the sense that anyone would immediately realize that nothing else could have been intended other than what is offered as rectification.

The PTO held that the errors in the Demand did not qualify as obvious errors because there was more than one possible rectification of these errors: either the information pertaining to the '218 Application or the information pertaining to the '856 Application was incorrect. *See* '856 Record at 84. The PTO's application of this rule in this circumstance is not arbitrary or capricious or an abuse of discretion.

### D. *PCT Rule 53.6*

■ Finally, plaintiff argues that the PTO applied PCT Rule 53.6 in an arbitrary manner. Rule 53.6 provides, under the heading "Identification of the International Application," that:

> for plaintiff to have filed a second Demand.

---

**6.** Similarly, it would have been past the nineteen-month deadline, and therefore too late,

The international application shall be identified by the name and address of the applicant, the title of the invention, the international filing date (if known to the applicant) and the international application number or, where such number is not known to the applicant, the name of the receiving Office with which the international application was filed.

Plaintiff argues that whereas the first two elements—the name and address of the applicant and the title of the invention—are mandatory, the latter two elements are optional, as the applicant only needs to provide this information if it is known to him. Thus, by disregarding the two mandatory elements in the Demand (which referred to the '856 Application), and relying on the two optional elements (which referred to the '218 Application), plaintiffs contends, the PTO applied Rule 53.6 in an arbitrary manner.

The PTO rejected this argument. It held that "in the present situation, the international filing date and international application number were clearly known to applicant, and therefore do not qualify as optional requirements." *See id.* at 83, 100. As discussed above, the PTO further held that of the five items listed in the box on the Demand labeled "Identification of the International Application," three corresponded to the '218 Application (the international application number, the international filing date and the priority date), and one item differed from that applicable to the '218 Application (the file reference number) by only one digit.[7] Based upon the information provided by plaintiff, the PTO's determination that the Demand referred to the '218 Application was not arbitrary or capricious or an abuse of discretion.

IV. Joining Further Applicants as Party Plaintiffs

The PTO moved to have R.S.R. Adtec Ltd. and Dov Sheffer, who are listed as the "further applicants" on the '856 Applica-

tion, joined as party plaintiffs pursuant to Rules 19 and 21 of the Federal Rules of Civil Procedure. Rule 19(a) provides that the court shall join interested parties whose absence may expose existing parties to multiple or inconsistent obligations. Plaintiff does not object to the joining of the other applicants as parties. The PTO's motion is granted.

V. Conclusion

For the foregoing reasons, the Commissioner's motion for summary judgment is granted, plaintiff's motion for summary judgment is denied, and the Commissioner's motion to have R.S.R. Adtec Ltd. and Dov Sheffer joined as party plaintiffs is granted. The clerk is directed to close this case.

---

7. The fifth item, the title of the invention,     clearly referenced the '856 Application.