**HELFGOTT & KARAS, P.C.,**
**Plaintiff–Appellant,**

and

**Dov Sheffer and R.S.R. Adtec Ltd., Plaintiffs,**

v.

**Q. Todd DICKENSON, Director of the United States Patent and Trademark Office, Defendant–Appellee.**

No. 99–1308.

United States Court of Appeals, Federal Circuit.

April 14, 2000.

---

Michael F. Sarney, Helfgott & Karas, P.C., of New York, New York, argued for plaintiffs-appellants. With him on the brief was Aaron B. Karas.

Mark Nagumo, Associate Solicitor, Office of the Solicitor, of Arlington, Virginia, argued for defendant-appellee. With him on the brief was Albin F. Drost, Acting Solicitor; John M. Whealan, Acting Deputy Solicitor; and Linda Moncys Isacson, Associate Solicitor. Of counsel were Scott A. Chambers, and Nancy C. Slutter, Attorneys, Office of the Solicitor.

Before PLAGER, CLEVENGER, and SCHALL, Circuit Judges.

CLEVENGER, Circuit Judge.

Plaintiff Helfgott & Karas, P.C. appeals the dismissal of its claims by the United States District Court for the Southern District of New York. *See Helfgott & Karas v. Lehman*, 47 F.Supp.2d 425 (S.D.N.Y.1998). At issue is the refusal of the Commissioner of the Patent and Trademark Office[1] to reinstate international prosecution of a patent application filed under the auspices of the Patent Cooperation Treaty. Because we conclude that the Commissioner acted arbitrarily and capriciously in dismissing the plaintiff's petition to correct

---

**1.** Effective March 29, 2000, the Commissioner of the Patent and Trademark Office is now known as the Director of that office. Because the district court and the parties refer to the position by its former title ("Commissioner"), we continue that use here to avoid any confusion.

the erroneous Demand for International Preliminary Examination, we vacate and remand.

## I

The circumstances of this case should give pause to those who engage in the complex yet crucial administrative process known as patent prosecution before the United States Patent and Trademark Office ("the PTO"). Mistakes are inevitable, much as all those involved try to minimize their possibility. Even if total elimination of mistakes is an illusory goal, their reasonable mitigation should not be. Sound judgment, flexibility, and the careful following of considered processes are critical to ensuring that small mistakes do not become large ones, and that mistakes of form do not overwhelm the correctness of substance. Unfortunately, in this case, at least some of these elements were lacking from both parties to this dispute, leaving it to us to ascertain error, and assign responsibility for it.

## A

The story begins in late March 1996. Over a span of five days, the law firm Helfgott & Karas, P.C. ("Helfgott") filed two international patent applications with the PTO. The first, listing the applicants as Helfgott, Dov Sheffer, and R.S.R. Adtec, is designated International Patent Application No. PCT/US96/03856, and entitled "Fluid Actuated Chuck" ("the '856 application"). The second, listing Helfgott and Yosef Eizenthal as applicants, is designated International Patent Application No. PCT/US96/04218, and entitled "Three Dimensional Puzzle" ("the '218 application"). Both the '856 and '218 applications claim priority dates of March 1995, based on earlier filings made in Israel.

Each of the international applications was filed under the provisions of the Pat-

ent Cooperation Treaty ("PCT"), an international agreement allowing inventors to streamline the process of obtaining patent rights across multiple member nations. *See* Patent Cooperation Treaty, art. 1 (hereinafter "PCT Treaty"). After filing with an "international authority" in a member nation—in this case, the PTO—the applicant may request that the authority perform a "preliminary examination," a nonbinding opinion by the authority relating to the patentability of the invention disclosed in the application. *See* PCT Treaty, art. 31. Requesting a preliminary examination offers the applicant a "first cut" at the patentability of the invention without incurring the expense of pursuing multiple national applications, and allows a ten-month delay in the prosecution of national applications without loss of any rights. According to PCT rules, a request for international examination must be transmitted to the international authority via a filing called a "Demand for International Preliminary Examination" ("Demand"). *See id.* A Demand must be filed before the end of the nineteenth month from the priority date of the application. *See* PCT Treaty, art. 39.

On October 21, 1996, Helfgott filed a Demand with the PTO. Of course, it is the responsibility of the applicant to submit initially correct information in its Demand. Nevertheless, the Demand form listed the application number, filing date, and priority date of the *'218 application,* but listed the title ("Fluid Activated Chuck"), applicants, and "agent's file reference number" relating to the *'856 application.* But to appreciate the full extent of uncertainty that surrounded this filing, one must also keep in mind that: (1) the first-listed applicant in both applications is exactly the *same* (Helfgott), and (2) the "agent's file reference number," a number used by applicants' agents for identification, differed by only a single digit between the '856 and '218 applications.

Looking back with the clarity of hindsight, there is no real dispute now between the parties that the Demand was intended to relate to the '856 application. Indeed, unbeknownst to the PTO, the '218 application was ordered abandoned by its inventors one week after the Demand was filed. When it was presented with the document, however, the Commissioner of the Patent and Trademark Office ("Commissioner") interpreted the Demand as requesting preliminary examination of the '218 application, not the '856 application. The Commissioner explains that his decision was based primarily on the international patent application number typed on the Demand form, and confirmed by the identity of the filing and priority dates and the first-listed applicant.

Having thus categorized the Demand, the Commissioner on November 21, 1996 sent back a paper styled "Invitation to Correct Defects in the Demand" ("the Invitation")—a communication which itself did perhaps as much to create confusion as did the Demand. While the Invitation listed the '218 application number and the filing date related to the '218 application, and the first-listed applicant (Helfgott) related to both the '218 application and the '856 application, the Invitation also listed the "agent's file reference number" relating to the '218 application. That is, while the Demand listed the agent's file reference number from the '856 application, the Invitation did *not* contain the same number—it instead listed the agent's file reference number found on the '218 application itself. The Commissioner apparently believed that the inclusion of the

agent's file reference number relating to the '856 application on the Demand was a typographical error. There was no indication on the Invitation, however, that the agent's file reference number thereon did not correspond to the agent's file reference number on the Demand. No notification was ever provided to Helfgott that the Commissioner had substituted a different agent's file reference number.

The procedure followed by the Commissioner is in stark contrast to the PCT International Preliminary Examination Guidelines ("the PCT Guidelines"), which are formal but nonbinding rules developed by international agreement to "give instructions as to the practice to be followed in the various stages of the international preliminary examination of international applications." PCT Guidelines § I–3.2, I–3.3. The PCT Guidelines specifically contemplate that the International Preliminary Examining Authority (in this case, the PTO) will make simple corrections to the Demand. When making such corrections or changes, "[t]he [Commissioner] informs the applicant of the correction made by sending him either a copy of the corrected sheet of the demand or by a separate notification." PCT Guidelines § 10.1. In addition, the Commissioner must make the correction on the original documentation, and "enter[ ] in the margin the letters 'IPEA.'" *Id.* There is no dispute that Helfgott was never notified of the change, and the record demonstrates that no correction was applied directly to the Demand and no entry of "IPEA" was made in the margins.[2]

The situation took yet another unfortunate turn when personnel at Helfgott,

---

**2.** We note that the Commissioner, in his brief and argument before this court, factually *disputes* that the file reference number was "changed." That is, the Commissioner implausibly suggests that because the Demand (in the Commissioner's view) clearly related to the '218 application, the Invitation, by listing the reference number for the '218 application, was simply "further correspondence relating to the '218 application, using infor-

mation appropriate to identify that application." *See* Appellee's Brf. at 29. Of course, the Commissioner fails to come to grips with the fact that such "further correspondence" contained a file reference number that was *different* from the very document (the Demand) that he interpreted as referring to the '218 application, and that such alteration was effected by the PTO.

upon receipt of the Invitation, simply deposited the document into the "dead" file of the then-abandoned '218 application, based on the agent's file reference number. That is, while the Invitation, by virtue of the "corrected" agent's file reference number and other identifying information, had all outward appearances of relating to the '218 application, nobody at Helfgott paused to consider the interesting question of why the Commissioner would be inviting them to correct errors in a Demand they did not file for an application that they considered abandoned. Indeed, over the next nine months, the Commissioner sent Helfgott at least four other documents relating to the '218 application, including a "Notification of Receipt of Demand," an "Opinion" on patentability, an International Preliminary Examination Report, and a Notification of Transmittal of International Preliminary Examination Report. At no time did Helfgott contact the Commissioner to ask why such documents were being prepared and transmitted for this application.

## B

In September 1997, as the end of the 30–month period after which the '856 application would have to be transmitted to the various member nations neared, Helfgott realized that it had not received any communications from the PTO with respect to the '856 application. A review of their internal files resulted in the discovery of the errors in the Demand. Believing that the Commissioner had simply failed to respond to the Demand, Helfgott on September 17, 1997, filed a "Petition for Expedited Action," notifying the Commissioner of the errors in the Demand, asking that the errors be corrected, and requesting immediate action on the Demand. The Commissioner responded by treating this initial request "as a petition under 37 C.F.R. § 1.182," and dismissed it as being

untimely "under 37 C.F.R. 1.181." Section 1.181(f) provides that "any such petition not filed within 2 months from the action complained of, may be dismissed as untimely." Because Helfgott's September 17, 1997, petition was filed more than two months after the Commissioner's Invitation identified possible errors in the Demand, the September 17 petition was dismissed as untimely.

Helfgott then wrote a letter in early October 1997 to the Assistant Commissioner of Patents, asking him "to look into the matter in the interests of justice and equity" pursuant to 37 C.F.R. § 1.183, which allows the Commissioner to suspend nonstatutory rules "in an extraordinary situation, when justice requires." After receiving no response, Helfgott wrote follow-up letters in early November and early December 1997. In late December, the Commissioner responded to Helfgott's 37 C.F.R. § 1.183 petition, taking the position that the Demand was clearly directed to the '218 application and concluded that because the preliminary examination had already been conducted on the '218 application, "it would be improper to do this same work again." The Commissioner further rejected that equity and justice demanded a different result, noting that "significant benefits have been obtained in the ['218] application" by virtue of the completed preliminary examination. Helfgott requested reconsideration of this decision in early January 1998. The Commissioner again rejected the request in a decision dated February 18, 1998. In March 1998, Helfgott once again requested reconsideration, arguing that, among other things, the errors in the Demand could be rectified pursuant to PCT Rule 91.1, which allows the correction of "obvious" errors in documents filed with international authorities under the auspices of the PCT. The Commissioner also rejected this request for reconsideration, ruling that PCT Rule 91.1 requires that: (1) the

errors to be corrected are obvious; and (2) that the correction itself be "the only rectification possible." In April 1998, Helfgott requested a further reconsideration, which was denied by the Commissioner in June 1998.

## C

This suit followed. Helfgott argued to the District Court that the Commissioner erred both in denying the September 17 petition as untimely, and in later deciding that no relief was available under PCT Rule 91.1. With regard to the untimeliness issue, Helfgott argued that the two month time limit for filing petitions under section 1.181 does not apply to petitions filed under section 1.182. The latter provision prescribes no time limit, and the former limits the two month filing time to "such" petitions, with the "such" referring to petitions filed under section 1.181, not section 1.182. As for PCT Rule 91.1, Helfgott argued that the Commissioner's understanding of the rule is unreasonable. On both issues, the district court sustained the Commissioner's positions as reasonable, even though the court determined that the Commissioner had "compounded" Helfgott's problems by altering the agent's file reference number on the Invitation. *Helfgott & Karas v. Lehman,* 47 F.Supp.2d 425, 432, 435 (S.D.N.Y.1998). Consequently, the district court rejected Helfgott's contention that the Commissioner had violated the APA in refusing to provide the relief Helfgott sought. *See id.* at 435.

Helfgott now appeals the judgment of the district court, arguing that the Commissioner erred in denying the section 1.183 petition, which sought rectification of the obvious errors in the Demand under PCT Rule 91.1.[3]

## II

■ We first address the question of our own jurisdiction. *See, e.g., Bender v. Williamsport Area School Dist.,* 475 U.S. 534, 541, 106 S.Ct. 1326, 89 L.Ed.2d 501 (1986) ("[E]very federal appellate court has a special obligation to satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review, even though the parties are prepared to concede it" (quotations and citations omitted).). This appeal comes to us from a United States District Court, raising claims against the Commissioner of the PTO under the Administrative Procedure Act, 5 U.S.C. §§ 702–06 (1994) ("the APA"). Our relevant jurisdictional authority is contained in 28 U.S.C. § 1295(a)(1) (1994), which states that this court enjoys exclusive appellate jurisdiction over appeals "based, in whole or in part, on section 1338 [of Title 28]." Section 1338(a), in turn, provides that district courts have jurisdiction over suits "arising under any Act of Congress relating to patents." 28 U.S.C. § 1338(a) (1994). Thus, our jurisdiction turns upon whether the claims here arise (at least in part) under the patent laws.

In *Hunter Douglas, Inc. v. Harmonic Design,* 153 F.3d 1318, 1328–29 (Fed.Cir. 1998), overruled on other grounds by *Midwest Indus., Inc. v. Karavan Trailers, Inc.,* 175 F.3d 1356 (Fed.Cir.1999) (relevant portion en banc), we analyzed whether claims sounding in state (in that case,

---

3. Because Helfgott does not appeal the district court's holding that the Commissioner properly applied the two month time period in section 1.181 to a section 1.182 petition, *see Helfgott & Karas,* 47 F.Supp.2d at 433 n. 5, we cannot reach this issue and rule in Helfgott's favor—even though the time limit in section 1.181 seems by the plain meaning of the section to apply only to that section.

We can note, however, that the Commissioner's rejection of the section 1.182 petition for untimeliness necessitated the further expenditure of private and public resources, as Helfgott pursued its request for relief and the Commissioner steadfastly refused to permit correction of the evident errors attributable to both parties.

California) unfair competition law arose under the patent laws. We concluded that they did: resolution of the plaintiff's complaint "necessarily depend[ed] on resolution of a substantial question of federal patent law," *id.* at 1328 (quoting *Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 808–09, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988))—in that case, whether inequitable conduct had been committed in the procurement of certain patents. *See id.* at 1328–29. This case requires a corresponding analysis in a solely federal context; we must consider whether the federal law claims here similarly require resolution of patent law questions.

■■■ The APA is clearly not a patent law. But this is not the end of the analysis. "In order to demonstrate that a case is one 'arising under' federal patent law, 'the plaintiff must set up some right, title or interest under the patent laws, or at least make it appear that some right or privilege will be defeated by one construction, or sustained by the opposite construction of these laws.'" *Christianson*, 486 U.S. at 807–08, 108 S.Ct. 2166 (quoting *Pratt v. Paris Gaslight & Coke Co.*, 168 U.S. 255, 259, 18 S.Ct. 62, 42 L.Ed. 458 (1897)). In other words, the scope of section 1338 extends to (1) claims where federal patent law creates the cause of action, or (2) claims where the plaintiff's right to relief necessarily depends upon resolution of a "substantial question of federal patent law." *Christianson*, 486 U.S. at 809, 108 S.Ct. 2166. Here, because Helfgott's claims invoke the APA, not federal patent law, the operative question is whether Helfgott's APA claims—that the PTO acted arbitrarily and capriciously in denying its petitions to accept the Demand for the '856 application—can be said to raise a substantial question under the patent laws. *See, e.g., Hunter Douglas*, 153 F.3d at 1328–29 (analyzing "naked" state law causes of action under prong (2) of *Christianson* ).

We answer this question in the affirmative. Helfgott's claims involve the performance (or lack thereof) of the Commissioner's duties under the provisions of the PCT. In particular, we note that section 364(a) of title 35 directs the PTO to act as the International Preliminary Examining Authority "in accordance with the applicable provisions of the [PCT] treaty, the [PCT] Regulations, and this title." Helfgott alleges that the PTO's refusal to recognize the Demand as relating to the '856 application is in violation of applicable provisions of the PCT Treaty, regulations, and PTO regulations. Further, section 364(b) specifically notes that "[a]n applicant's failure to act within prescribed time limits in connection with requirements pertaining to a pending international application may be excused upon a showing satisfactory to the Commissioner of unavoidable delay." Likewise, Helfgott claims that any delays in the perfecting of the Demand with respect to the '856 application are excusable. Accordingly, the actions of the PTO in complying with the dictates of 35 U.S.C. § 364 clearly raise substantial questions under the patent laws. *See Christianson*, 486 U.S. at 808, 108 S.Ct. 2166. We thus hold that the question of whether the Commissioner has violated the APA in applying the PCT rules and regulations, as well as its own regulations, raises a substantial question under the patent laws sufficient to vest jurisdiction with the district court based in part upon 28 U.S.C. § 1338(a). Therefore, the sole avenue of appeal for these claims is to this court. *See* 28 U.S.C. § 1295(a). *Accord Cedars–Sinai Medical Center v. Watkins*, 11 F.3d 1573, 1577–80 (Fed.Cir.1993) (claims based on 42 U.S.C. § 5908—vesting title to inventions made in government labs to the United States—arise under the patent laws); *Franchi v. Manbeck*, 947 F.2d 631, 633–34 (2d Cir. 1991) (mandamus claims related to PTO qualifying exam arise under the patent laws); *Morganroth v. Quigg*, 885 F.2d 843, 846 (Fed.Cir.1989) (mandamus and APA

claims relating to Commissioner's refusal to revive abandoned patent application arise under the patent laws); *Athridge v. Quigg,* 852 F.2d 621, 623 (D.C.Cir.1988) (concurring with analysis in *Wyden,* below); *Wyden v. Commissioner of Patents & Trademarks,* 807 F.2d 934, 936–37 (Fed. Cir.1986) (en banc) (mandamus claims related to attorney's authority to practice before the PTO arise under the patent laws); *Alco Standard Corp. v. Tennessee Valley Auth.,* 808 F.2d 1490, 1493–94 (Fed. Cir.1986) (claims under 16 U.S.C. § 831r for reasonable compensation for patent infringement arise under the patent laws); *Dubost v. Patent & Trademark Office,* 777 F.2d 1561, 1564–65 (Fed.Cir.1985) (claims related to PTO's refusal to accept an unsigned check for purposes of computing a filing date arise under the patent laws).

### III

■ Turning now to the merits, we address Helfgott's contention that the Commissioner's refusal to grant relief under 37 C.F.R. § 1.183 was an abuse of discretion, thereby working a violation of 5 U.S.C. § 706(2)(A) (1994) (requiring courts to "hold unlawful and set aside agency actions ... found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."). The district court granted summary judgment in favor of the Commissioner on this issue, *see Helfgott & Karas,* 47 F.Supp.2d at 436, which we review de novo, *see Conroy v. Reebok Int'l, Ltd.,* 14 F.3d 1570, 1575 (Fed.Cir.1994).

Pursuant to 37 C.F.R. § 1.183, "[i]n an extraordinary situation, when justice requires, any requirement of the regulations ... not required by the statutes may be suspended or waived by the Commissioner." Helfgott requested that the Commissioner allow the correction of errors in the Demand—to make clear that the Demand related to the '856 application, not the '218 application. Helfgott argues that while it

bears no small amount of blame for the circumstances, the Commissioner was also a primary contributor, and should have accordingly exercised his discretion in this situation. We agree.

First, we hold that the Commissioner misapplied PCT Rule 91.1 in denying Helfgott's petition under 37 C.F.R. § 1.183. That section (1.183) authorizes the Commissioner, in the interests of justice, to suspend or waive any otherwise applicable non-statutory requirement. Through the section 1.183 petition, Helfgott sought permission to correct the Demand in a manner that would preserve the October 21, 1996, filing date of that document. In order to achieve that result, the Commissioner would either have to extend the time limit allowed for response to the Invitation—which he is authorized to do pursuant to PCT Rule 60.1(a)—or withdraw the flawed Invitation referring to the '218 application and reissue a correct Invitation to Correct Defects, thus allowing Helfgott to respond to that Invitation in a timely manner and make the corrections authorized by PCT Rule 91.1. *See* PCT Rule 60.1(b) ("If the applicant complies with the invitation within the time limit ... the demand shall be considered as if it had been received on the actual filing date."). Either of those two actions would provide the relief that Helfgott seeks—the opportunity to avail himself fully of the benefits of PCT Rule 91.1. That Rule (which is legally binding on the Commissioner) allows correction of "obvious errors" in a filing. Helfgott argues that Rule 91.1 allows the application number printed on the Demand to be timely changed to reflect that the Demand is related to the '856 application. The Commissioner argues that such a change would not be an "obvious" change, as (in the Commissioner's view) the Demand is related only to the '218 application.

The dispute appears to be one of interpretation. Rule 91.1(b) states as follows:

Errors which are due to the fact that something other than what was obviously intended was written in the international application or other paper shall be regarded as obvious errors. The rectification itself shall be obvious in the sense that anyone would immediately realize that nothing else could have been intended than what is offered as rectification.

◼ The Commissioner argues that Rule 91.1(b) thus contains two requirements: (1) that the error be "obvious"; and (2) that the correction itself be "obvious" to anyone. The Commissioner argues that while the Demand obviously contained errors, the correction of the application number was not for the Commissioner an obvious fix, and that thus Helfgott's suggested change violates (2). In this respect, the Commissioner urges us to accept his interpretation of Rule 91.1, namely that "anyone," for the purposes of the Rule, can only mean the Commissioner. *See Chevron U.S.A. v. Natural Resources Defense Council,* 467 U.S. 837, 845, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). In this case, however, we find the Commissioner's view of Rule 91.1 to be unreasonable and thus not entitled to judicial deference. *Cf. id.* While we readily concur with the Commissioner that Rule 91.1 contains the two prongs he suggests, we cannot agree with the Commissioner's implicit contention that only the PTO is authorized to point out and suggest obvious errors. There is no real dispute that the Demand contained significant—and obvious—errors. Thus, we accept as a given that the Demand was infected with obvious error: it contained information that was not intended. Once everyone concerned realizes the existence of obvious error, the question is whether the cure for the error would be obvious to "anyone."

The dispute is whether the change of the application number—thereby confirming the Demand's relationship to the '856 application—would be an "obvious" change within the meaning of Rule 91.1 We hold that it would be. Under Rule 91.1, Helfgott is entitled to *both* point out "obvious" errors in the Demand and suggest "obvious" changes. The alterations that Helfgott suggest are plainly obvious once it is agreed that the Demand was supposed to relate to the '856 application: a Demand relating to the '856 application plainly must list the '856 application number. Thus while the Commissioner may be reasonable in using the application number to drive his initial analysis of the obviously flawed Demand, adopting the Commissioner's approach—that the change of an application number is not an "obvious" change—would seriously undermine PCT Rule 91.1. Applicants who mistakenly transposed digits in the application number placed on filed documents would be at risk that the Commissioner would adopt the wooden position he takes here: that the application number cannot later be changed, notwithstanding the provisions of PCT Rule 91.1, because the erroneous document appears to relate to another application. This we cannot allow. Where the applicant points out an "obvious" error upon which there is no disagreement, and an "obvious" fix for that error, Rule 91.1 authorizes the entry of such corrections. Here, Helfgott points to the obvious errors in the Demand, and suggests the obvious necessary changes. The Commissioner's refusal to accept these changes was legally incorrect.

In addition, it is unarguable that the Commissioner bears some responsibility for the unnecessary expenditure of resources that led to Helfgott's final petition to correct the Demand. As we noted above, the Commissioner sent a critical document—the Invitation—with an "agent's file reference number" that did not match the Demand, thereby confusing the relationship between the Demand and the Invitation. This, of course, led to the

failure of Helfgott to timely recognize that the Demand was flawed. The unexpected action of the PTO—the change of the "agent's file reference number" in contravention of the PCT Guidelines—warrants the use of the Commissioner's discretionary authority to remedy the mistakes. The argument for the exercise of discretion would appear to be especially strong in this case, where the harmful actions of the PTO were, as noted above, in contravention of the PCT Guidelines, which requires that the applicant be given notice whenever documents filed with the PTO are altered.

We therefore hold that the Commissioner erred in refusing to grant Helfgott's request for relief under PCT Rule 91.1. That error constitutes an abuse of discretion under the APA on the Commissioner's part, and the error is magnified by the Commissioner's error in contributing to the confusion by changing the agent's file reference number on the Invitation. Furthermore, when PCT Rule 91.1 is correctly understood, it becomes clear that the Commissioner's consistently steadfast resistance to correction of the Demand was unreasonable.

With Helfgott's 37 C.F.R. § 1.183 petition before him, the Commissioner was required to grant Helfgott the relief sought, which was to allow the correction of the errors in the Demand without loss of the October 21, 1996 filing date. Upon remand, we leave it to the Commissioner's sound discretion to determine which procedural route is best traveled to secure this result.

## IV

We vacate the district court's summary judgment in favor of the Commissioner, and remand the case back to the district court with instructions to set aside the Commissioner's rulings and return the case to the Commissioner for further proceedings not inconsistent with this opinion.

COSTS

No costs.

*VACATED & REMANDED*