**VECTRA FITNESS, INC.,**
**Plaintiff–Appellant,**

**v.**

**TNWK CORPORATION (formerly known as Pacific Fitness Corporation),**
**Defendant–Appellee.**

No. 98–1192.

United States Court of Appeals, Federal Circuit.

Dec. 14, 1998.

Rehearing Denied; Suggestion for Rehearing In Banc Declined Jan. 22, 1999.

Ramsey M. Al–Salam, Seed and Berry LLP, Seattle, Washington, argued for plaintiff-appellant. With him on the brief was Richard W. Seed.

Ronald W. Reagin, Blakely, Sokoloff, Taylor & Zafman, LLP, Los Angeles, California, argued for defendant-appellee. With him on the brief was George W. Hoover.

Before PLAGER, RADER, and SCHALL, Circuit Judges.

SCHALL, Circuit Judge.

Vectra Fitness, Inc. (Vectra) appeals a partial summary judgment of the United States District Court for the Western District of Washington invalidating claims added to Vectra's U.S. Patent No. 4,809,972 (the '972 patent) in reissue proceedings. *Vectra Fitness, Inc. v. Pacific Fitness Corp.,* *135 F.3d 777, 1998 WL 31532,* No. C96–1892D (W.D.Wash. Oct. 3, 1997). The district court held that the invalidated claims—which were narrower than the claims originally contained in the '972 patent, but broad-

er than the claims remaining in the patent after a disclaimer—impermissibly enlarged the scope of the claims of the original patent more than two years after the grant of the original patent, in violation of 35 U.S.C. § 251.[1] We have jurisdiction over the appeal pursuant to 28 U.S.C. § 1292(c)(1). We affirm.

## BACKGROUND

### I.

On March 7, 1989, the '972 patent, entitled "Exercise Machine with Multiple Exercise Stations," was issued to Vectra as assignee. The '972 patent related to multi-station exercise machines that allow two or more exercise stations to be connected to a single weight stack.

As issued, the '972 patent contained 27 claims. On February 16, 1990, Vectra submitted a disclaimer to the United States Patent and Trademark Office (PTO), in accordance with 35 U.S.C. § 253. The disclaimer canceled Claims 1, 2, 3, 4, 13, 20, 21, and 24. These were the broadest claims of the '972 patent. Vectra submitted the disclaimer when it became aware that the eight claims were invalid based on previously unknown prior art. After the disclaimer was received, it was mishandled by the PTO. Although the disclaimer was added to the file wrapper of the '972 patent, it was not entered on either the cover page or the contents page of the wrapper. In addition, the PTO failed to publish the disclaimer in the Official Gazette, as contemplated by PTO regulations. *See* 37 C.F.R. § 1.321(a) (1990) ("A notice of the disclaimer is published in the *Official Gazette* . . . .").

On May 9, 1991, Vectra filed a reissue application that sought to add new claims 28–30 to the '972 patent. The reissue application, including new claims 28–30, was issued on March 29, 1994, as U.S. Patent No. Re 34,572 (the '572 patent). Before the district court, the parties stipulated that claims 28–30 were narrower in scope than the claims originally contained in the '972 patent, but broader in scope than the claims remaining in the patent after the 1990 disclaimer.

### II.

Vectra sued TNWK Corporation (TNWK) (formerly known as Pacific Fitness Corporation) for infringement of the '572 patent on December 4, 1996. In due course, TNWK moved for partial summary judgment. It did so on the ground that claims 28–30 were invalid under 35 U.S.C. § 251 because they impermissibly enlarged the scope of the '972 patent more than two years after the date of its original issue. On October 3, 1997, the district court granted TNWK's motion, holding that the 1990 disclaimer was effective from (i.e., "dated back" to) March 7, 1989, the date of the original patent, and that therefore the reissue claims were broader than the claims of the "original patent." In so holding, the district court rejected Vectra's argument that the disclaimer never took effect because the PTO failed to publish it. The court stated that since current records of the PTO contained the disclaimer as filed February 20, 1990, "it seems obvious that the disclaimer was 'in writing and recorded' in some fashion." The court concluded, "There is virtually no way to say the PTO did not 'record' the disclaimer as required."

Vectra timely moved to certify the case for interlocutory appeal pursuant to 28 U.S.C. § 1292(b), and the district court granted the motion. On January 22, 1998, this court granted Vectra's petition for permission to appeal. *See Vectra Fitness, Inc. v. Pacific Fitness Corp.*, 135 F.3d 777 (Fed.Cir.1998) (Table). Currently, proceedings in the district court are stayed.

## DISCUSSION

 We review a district court's grant of summary judgment *de novo*. *See Astra v. Lehman*, 71 F.3d 1578, 1580, 37 USPQ2d 1212, 1214 (Fed.Cir.1995); *Glaxo Operations UK Ltd. v. Quigg*, 894 F.2d 392, 395, 13 USPQ2d 1628, 1630 (Fed.Cir.1990). If, as in this case, no genuine issues of material fact are present, we need only decide whether the decision by the district court is correct as a matter of law. *See Armco, Inc. v. Cyclops*

---

1. All statutory references are to the 1994 version of the United States Code.

*Corp.*, 791 F.2d 147, 149, 229 USPQ 721, 723 (Fed.Cir.1986). This case presents a narrow issue of first impression: whether a reissue application filed more than two years after the grant of the original patent is bounded by the claims originally contained in the patent or by the claims remaining in the patent after a disclaimer is filed. This issue of statutory interpretation is a question of law, which we review *de novo*. *See In re Chu*, 66 F.3d 292, 296, 36 USPQ2d 1089, 1092–93 (Fed.Cir.1995).

### I.

■ As a preliminary matter, Vectra argues that the mishandling of the disclaimer by the PTO prevented it from being "recorded" within the meaning of that term in 35 U.S.C. § 253. *See* 35 U.S.C. § 253 ("Such disclaimer shall be in writing, and recorded in the Patent and Trademark Office; and it shall thereafter be considered part of the original patent. . . ."). Accordingly, so the argument goes, the purported disclaimer had no effect. We disagree.

■ The recording of a disclaimer is not dependent upon actions taken by the PTO. The pertinent PTO rule provides as follows:

The disclaimer, to be recorded in the Patent and Trademark Office, must:

(1) Be signed by the patentee, or an attorney or agent of record;

(2) Identify the patent and complete claim or claims, or term being disclaimed. A disclaimer which is not a disclaimer of a complete claim or claims, or term will be refused recordation;

(3) State the present extent of patentee's ownership interest in the patent; and

(4) Be accompanied by the fee set forth in § 1.20(d).

37 C.F.R. § 1.321(a) (1997); *see also* Manual of Patent Examining Procedure (MPEP) § 317.01 (6th ed. rev. 3 1997) (setting the date of recording of an assignment, which is analogous to recording a disclaimer, as the

date on which the assignment is received by the PTO "in proper form and with the full filing fee"). The language of the regulation was slightly different when the disclaimer at issue in this case was filed, in that the regulation in 1990 did not specifically refer to recording.[2] However, both the current regulation and the regulation in 1990 set forth the requirements for a valid disclaimer and therefore the requirements for the recording of the disclaimer. Moreover, nothing in the statutes or regulations requires any action by the PTO for a disclaimer to be "recorded." There is no dispute that Vectra's disclaimer was received by the PTO in proper form and with the appropriate filing fee on February 20, 1990. Accordingly, the disclaimer was recorded on that date regardless of its handling by the PTO.

### II.

■■ Turning to the matter of the disclaimer and the reissue, we begin our analysis with the language of the statute. *See Zenith Elec. Corp. v. United States*, 77 F.3d 426, 430 (Fed.Cir.1996). Where "the statute's language is plain, 'the sole function of the courts is to enforce it according to its terms.'" *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989) (quoting *Caminetti v. United States*, 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917)).

The reissue of patents is governed by 35 U.S.C § 251, which provides in pertinent part: "No reissued patent shall be granted enlarging *the scope of the claims of the original patent* unless applied for within two years from the grant of the original patent." (Emphasis added.) Disclaimers are governed by 35 U.S.C. § 253, which provides as follows:

Whenever, without any deceptive intention, a claim of a patent is invalid the remaining claims shall not thereby be rendered invalid. A patentee, whether of the whole or any sectional interest therein,

---

2. As in effect in 1990, the regulation provided as follows:

A disclaimer under 35 U.S.C. § 253 must be accompanied by the fee set forth in § 1.20(d) and identify the patent and the claim or claims

which are disclaimed, and be signed by the person making the disclaimer, who shall state therein the extent of his or her interest in the patent.

37 C.F.R. § 1.321(a) (1990).

may, on payment of the fee required by law, make disclaimer of any complete claim, stating therein the extent of his interest in such patent. Such disclaimer shall be in writing, and recorded in the Patent and Trademark Office; and it shall thereafter be *considered as part of the original patent* to the extent of the interest possessed by the disclaimant and by those claiming under him.

In like manner any patentee or applicant may disclaim or dedicate to the public the entire term, or any terminal part of the term, of the patent granted or to be granted.

(Emphasis added.)

Section 251 prohibits the addition of claims that broaden the scope of the claims of the original patent more than two years after the grant of the patent. *See* 35 U.S.C. § 251. As noted above, the parties agree that claims 28–30 were broader than the claims remaining after the 1990 disclaimer, but narrower than the disclaimed claims. Accordingly, the validity of claims 28–30 depends upon whether or not the disclaimed claims are considered part of the "original patent," as that term is used in section 251. If the disclaimed claims are considered part of the "original patent," claims 28–30 did not broaden the scope of the patent more than two years after its grant in contravention of section 251. If the disclaimed claims are not considered part of the "original patent," however, claims 28–30 did broaden the scope of the patent more than two years after its grant and therefore did contravene section 251.

Vectra argues that the plain meaning of the term "claims of the original patent" in 35 U.S.C. § 251 refers to the claims contained in the patent when it issued, unaffected by any disclaimer pursuant to 35 U.S.C. § 253. TNWK counters that the plain language of 35 U.S.C. § 253 and the pertinent case law indicates that a disclaimer becomes a part of the original patent and that the disclaimed claims are viewed as if they never existed. TNWK asserts that, by filing a disclaimer, Vectra effectively modified the original patent to exclude the disclaimed claims and that any reissue application that enlarged the

scope of the non-disclaimed claims must have been applied for within two years of the grant of the original patent. We agree with TNWK.

This court has interpreted the term "considered as part of the original patent" in section 253 to mean that the patent is treated as though the disclaimed claims never existed. *See Guinn v. Kopf,* 96 F.3d 1419, 1422, 40 USPQ2d 1157, 1160 (Fed.Cir.1996) ("A statutory disclaimer under 35 U.S.C. § 253 has the effect of canceling the claims from the patent and the patent is viewed as though the disclaimed claims had never existed in the patent."); *see also Altoona Publix Theatres v. American Tri-Ergon Corp.,* 294 U.S. 477, 492, 55 S.Ct. 455, 461, 79 L.Ed. 1005 (1935) ("Upon the filing of the disclaimers, ... the public was entitled to manufacture and use the device originally claimed as freely as though [the claim] had been abandoned."). Consequently, when Vectra invoked section 253 and disclaimed the broadest claims in the '972 patent, it effectively eliminated those claims from the original patent.

■ Vectra does not contest that the disclaimer effectively eliminated the disclaimed claims from the "original patent" within the meaning of that term in section 253. Vectra asserts, however, that section 253 has nothing to do with the interpretation of the term "original patent" in section 251. In other words, Vectra argues that the original patent excludes the disclaimed claims under section 253, but includes the disclaimed claims for purposes of section 251. We disagree. The term "original patent" is used in both sections 251 and 253; it cannot be presumed that the term has two different meanings in these closely related statutes. *See United Sav. Ass'n v. Timbers of Inwood Forest Assocs.,* 484 U.S. 365, 371, 108 S.Ct. 626, 630, 98 L.Ed.2d 740 (1988) (stating that the same term used in a related statute clarifies the meaning of the term). Further, statutory interpretation is a "holistic endeavor" that requires consideration of a statutory scheme in its entirety. *Id.* at 371, 108 S.Ct. at 630 ("A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme—because the same ter-

minology is used elsewhere in a context that makes its meaning clear...."). When the relevant statutory provisions are read together in light of the case law, it is apparent that the term "claims of the original patent" in section 251 unambiguously excludes the claims disclaimed pursuant to section 253.

No previous decision of our court has considered the application of the date back rule of section 253 (i.e., the provision providing that a disclaimer becomes part of the original patent) to reissue applications. However, the date back rule has been applied beyond the confines of a section 253 analysis. In *In re Hyman*, 185 USPQ 441 (Pat.Off.Sol.1975), the Patent and Trademark Office Solicitor (Solicitor) applied the date back rule in determining whether a certificate of correction was required to correct claims previously disclaimed. Hyman had disclaimed Claims 24, 30, and 67 of U.S. Patent No. 3,705,938, pursuant to 35 U.S.C. § 253. *See Hyman*, 185 USPQ at 442. Subsequently, he submitted a request under 35 U.S.C. § 255 for a certificate of correction to cancel the same claims. *See id.* Hyman sought the apparently redundant certificate of correction because it would date back to the date of the original patent. *See id.* Section 255 provides that a certificate of correction "shall have the same effect ... as if the [patent] had been originally issued in such corrected form." 35 U.S.C. § 255. The Solicitor held that the certificate of correction was superfluous because the disclaimer, like the certificate of correction, relates back to the original date of the patent. *See Hyman*, 185 USPQ at 442.

In sum, we conclude that the reading of sections 251 and 253 that is urged by Vectra—that in the wake of a disclaimer, subsequent reissue claims are bounded by the claims as originally filed prior to the disclaimer—is contrary to the plain language of the statutes and pertinent case law. Moreover, an additional consideration also weighs against the interpretation of the statutory scheme for which Vectra argues.

 The public is entitled to rely upon the public record of a patent in determining the scope of the patent's claims. *See Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576,

1583, 39 USPQ2d 1573, 1577 (Fed.Cir.1996). This reliance enables businesses, as well as others, to plan their future conduct in as certain an environment as possible. *See id.; see also Sage Prods., Inc. v. Devon Indus., Inc.*, 126 F.3d 1420, 1424, 44 USPQ2d 1103, 1107 (Fed.Cir.1997) (discussing the public-notice function of claims in the context of a doctrine of equivalence analysis). For example, the "recapture rule" prevents a patentee from regaining through reissue subject matter surrendered during prosecution, thus ensuring the ability of the public to rely on a patent's public record. *See In re Clement*, 131 F.3d 1464, 1468, 45 USPQ2d 1161, 1164 (Fed.Cir.1997).

In a similar vein, after the two-year window for broadening reissues, the public should be able to rely on the scope of non-disclaimed claims. *Cf. Wollensak v. Reiher*, 115 U.S. 96, 100, 5 S.Ct. 1137, 1139, 29 L.Ed. 350 (1885) (discussing the rule of laches as applied to broadening reissues and stating that, "no one should be relieved who has slept upon his rights, and has thus led the public to rely on the implied disclaimer involved in the terms of the original patent"). Under the approach to sections 251 and 253 urged by Vectra, however, a patentee would be able to reclaim previously disclaimed subject matter at any time during the term of the patent. Put another way, nothing would prevent the patentee from filing at any time a reissue application that reclaimed most of the disclaimed subject matter because the patentee could never be said to be broadening the scope of the original claims. This partial recapture would effectively render disclaimers a nullity. The public could never rely on the scope of the non-disclaimed claims. To be safe from allegations of infringement, the public would have to avoid almost the entire scope of the claims as originally filed because, at any time, a patentee could file a reissue application that included a claim recapturing most of the subject matter previously disclaimed. In short, allowing Vectra to later recapture some of the subject matter that was explicitly disclaimed would negate the finality and certainty of the disclaimer. We believe that it would be contrary to established principles of statutory interpretation to adopt a reading of 35 U.S.C. § 253 that yielded such a result.

*See Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 575, 102 S.Ct. 3245, 3252, 73 L.Ed.2d 973 (1982) ("[I]nterpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available.").

CONCLUSION

For the foregoing reasons, the judgment of the district court is affirmed.

*AFFIRMED.*