# United States Court of Appeals
# for the Federal Circuit

—————————

**IN RE SHUNPEI YAMAZAKI**

—————————

2012-1086

(Serial No. 10/045,902)

—————————

Appeal from the United States Patent and Trademark Office, Board of Patent Appeals and Interferences.

—————————

Decided: December 6, 2012

—————————

ERIC J. ROBINSON, Robinson Intellectual Property Law Office, P.C., of Fairfax, Virginia, argued for the appellant. With him on the brief was SEAN C. FLOOD.

ROBERT J. MCMANUS, Associate Solicitor, Office of the Solicitor, United States Patent and Trademark Office, of Alexandria, Virginia, argued for appellee. With him on the brief were RAYMOND T. CHEN, Solicitor, and NATHAN K. KELLEY, Associate Solicitor.

—————————

Before LOURIE and REYNA, *Circuit Judges*, and KRIEGER, *District Judge*.[*]

LOURIE, *Circuit Judge*.

Appellant Shunpei Yamazaki appeals from a decision of the Board of Patent Appeals and Interferences ("the Board") affirming the rejection of reissue application 10/045,902 (the "Reissue Application") for lack of error correctable under 35 U.S.C. § 251. *Ex parte Yamazaki*, No. 2010-002033, 2011 WL 109119 (B.P.A.I. Jan. 10, 2011) ("*Board Decision*"), *reh'g denied*, 2011 WL 3605913 (B.P.A.I. Aug. 12, 2011) ("*Rehearing Decision*"). Because we agree that reissue proceedings cannot be used to withdraw a terminal disclaimer from Yamazaki's issued patent, we affirm.

## BACKGROUND

This appeal reaches us at the close of a long-running dispute between Yamazaki and the United States Patent and Trademark Office ("PTO") over a terminal disclaimer filed during the prosecution of U.S. Patent 6,180,991 (the "'991 patent").

In 1995, Yamazaki filed U.S. Patent Application 08/426,235 (the "Original Application"), entitled "Improved Semiconductor Having Low Concentration of Phosphorus." During prosecution, the examiner issued an obviousness-type double patenting rejection based on Yamazaki's earlier-issued U.S. Patent 4,581,476 (the "'476 patent"). To overcome that rejection, Yamazaki filed a terminal disclaimer on November 27, 1996, affirmatively

---

[*] Honorable Marcia S. Krieger, District Judge, United States District Court for the District of Colorado, sitting by designation.

disclaiming the statutory term of any patent granted on the Original Application that would extend beyond the expiration date of the '476 patent. The parties agree that the '476 patent expired on December 22, 2003.

Yamazaki later amended each independent claim of the Original Application, such that, in Yamazaki's view, the pending claims became patentably distinct over the claims of the '476 patent and the terminal disclaimer became unnecessary. Accordingly, on April 8, 1999, with the Original Application still pending, Yamazaki submitted a petition under 37 C.F.R. § 1.182 requesting that the PTO withdraw the recorded terminal disclaimer ("Petition to Withdraw"). *See* Manual of Patent Examining Procedure ("MPEP") § 1490 (7th ed., 1998) ("If timely requested, a recorded terminal disclaimer may be withdrawn before the application in which it is filed issues as a patent . . . . [T]he nullification of a recorded terminal disclaimer may be addressed by filing a petition under 37 C.F.R. 1.182 . . . .").

The PTO did not act on Yamazaki's petition. Prosecution of the Original Application continued, however, and led to a Notice of Allowance issued on July 18, 2000. With the Petition to Withdraw still pending, Yamazaki paid the requested issue fee, and the Original Application duly issued as the '991 patent on January 30, 2001. The terminal disclaimer thus remained in force on the issue date, as reflected on the face of the '991 patent, and as a result substantially curtailed the enforceable term of the '991 patent. That is, the '991 patent would have expired on January 30, 2018, if afforded the full 17-year term allowable under 35 U.S.C. § 154(c)(1); however, adopting the December 22, 2003, expiration date of the '476 patent effectively limited the '991 patent to a term of only 35 months.

On May 10, 2001, approximately three months after the '991 patent issued and more than two years after Yamazaki first sought to withdraw the terminal disclaimer, the PTO issued a decision dismissing the Petition to Withdraw. The PTO concluded that it could not consider Yamazaki's petition because a recorded terminal disclaimer may not be nullified after the subject patent has issued. Yamazaki requested reconsideration, which the PTO denied.

Yamazaki then changed tack and filed the Reissue Application now before us on January 16, 2002, seeking to rescind the terminal disclaimer through reissuance of the '991 patent. The Reissue Application sought to correct "errors" committed during prosecution of the Original Application that had rendered "the subject '991 patent inoperative during its terminal part of the statutory term" and resulted in Yamazaki "claim[ing] less than the patentee had the right to claim in regards to the term of the '991 patent."[1] The PTO did not act on the Reissue Appli-

---

[1]     In particular, Yamazaki submitted a declaration with the Reissue Application that identified the following as errors allegedly correctable by reissue:
  1   The error of the applicants in failing to ensure proper disposition of the *Petition to Withdraw* during prosecution of the [Original Application];
  2   The error of the applicants in not withdrawing the [Original Application] from issuance under 37 CFR 1.313 before the payment of the issue fee;
  3   The error of the applicants in not withdrawing the [Original Application] from issuance under 37 CFR 1.313 after the payment of the issue fee;
  4   The error of the applicants in not deferring issuance of the patent under 37 CFR 1.314

cation until April 6, 2004—by which time the '476 and '991 patents had expired—when the examiner rejected Yamazaki's oath and declaration as defective for failing to recite an error upon which a reissue application could be based. *See* MPEP § 1490 ("It has been the Office position that reissue is not available to withdraw or otherwise nullify the effect of a terminal disclaimer recorded in an issued patent."). Yamazaki timely responded, and on January 4, 2005, the examiner issued a final rejection on similar grounds. An in-person examiner interview occurred sometime in the ensuing three months,[2] and the examiner entered an interview summary noting that those present at the interview had "agreed . . . that the Reissue can be used to correct an error involving a Terminal Disclaimer." Nevertheless, the PTO delayed further action for more than two years before issuing another non-final office action that once again rejected the Reissue Application as premised on a defective basis for reissue.

Rather than pursue further prosecution, Yamazaki filed an appeal to the Board on September 24, 2007. Yamazaki's appeal engendered yet another lengthy delay, as the Board did not issue its initial decision until January 11, 2011. *Board Decision*, 2011 WL 109119.

The Board, convening as an expanded panel of seven Administrative Patent Judges, concluded that the terminal disclaimer had "reset the expiration date of the origi-

---

until the outstanding *Petition to Withdraw* was considered; and

5  The error of the Examiner/USPTO in failing to consider and act upon the *Petition to Withdraw* filed 21 months prior to issuance of the subject of the '991 patent.

[2]  The examiner's summary of the interview, dated April 5, 2005, does not specify the interview date.

nal '991 patent to that of the '476 patent." *Id.* at \*4. The Board held that the PTO therefore could not reissue the '991 patent to remove the terminal disclaimer under 35 U.S.C. § 251 because that statute (1) prohibits reissuing an expired patent, and (2) precludes expanding a reissued patent's term beyond that set when the original patent issued. *Id.* at \*5–7. The Board denied Yamazaki's request for rehearing, reiterating that the "term of the original patent," as used in § 251, is fixed as of the original patent's date of issue. *Rehearing Decision*, 2011 WL 3605913, at \*2–5. Two members of the panel concurred in the result but differed with the majority's interpretation of § 251, concluding that reissue proceedings would be appropriate for withdrawing a terminal disclaimer recorded in an issued but as yet unexpired patent. *Id.* at \*6; *see also Board Decision*, 2011 WL 109119, at \*8–9.

Yamazaki appealed, and we have jurisdiction pursuant to 28 U.S.C. § 1295(a)(4).

## DISCUSSION

The question presented in this appeal is whether § 251 permits the use of reissue proceedings to withdraw a terminal disclaimer that was in effect upon issuance of the '991 patent. The outcome turns on the correct interpretation of § 251, which we consider *de novo*. *In re Clement*, 131 F.3d 1464, 1468 (Fed. Cir. 1997).

In pertinent part, § 251 reads as follows:

Whenever any patent is, through error without any deceptive intention, deemed wholly or partly inoperative or invalid, by reason of a defective specification or drawing, or by reason of the patentee claiming more or less than he had a right to

claim in the patent, the Director shall, on the surrender of such patent and the payment of the fee required by law, reissue the patent for the invention disclosed in the original patent, and in accordance with a new and amended application, *for the unexpired part of the term of the original patent.* No new matter shall be introduced into the application for reissue.

35 U.S.C. § 251 (2006) (emphasis added).

Yamazaki contends that the Board erred in rejecting his reissue application for failure to state an error correctable by reissue under § 251. Specifically, Yamazaki points to errors of his own and of the PTO that, by allowing the '991 patent to issue with the Petition to Withdraw still pending, *see supra* note 1, rendered the '991 patent wholly or partially inoperative and caused him to claim less than he was entitled to by unnecessarily disclaiming part of the '991 patent's full term. Yamazaki argues further that "the term of the original patent," as used in § 251, refers to the maximum statutory grant of exclusivity under 35 U.S.C. § 154(a), which provides that "such grant shall be for a term beginning on the date on which the patent issues and ending 20 years from the date on which the application for the patent was filed." According to Yamazaki, a terminal disclaimer does not alter that statutorily defined *term* but merely adjusts the patent's *expiration date* without altering the statutory term itself. Yamazaki thus maintains that any disclaimed portion of the base statutory term remains available and subject to reissue as part of the "term of the original patent" specified in § 251.

The PTO counters that once a patent has issued, a recorded terminal disclaimer becomes part of the original

patent and defines its term, so that the patent must be treated as if the disclaimed term never existed. In the PTO's view, Yamazaki's request to reissue the '991 patent without its terminal disclaimer would thus violate § 251 by expanding the term of the reissue beyond "the term of the original patent." In the alternative, the PTO contends that § 251 also precludes Yamazaki's reissue request because no "*unexpired part* of the term of the original patent" remains, the '991 patent having expired with the '476 patent in 2003.

The parties thus agree that the "term of the original patent" defines the outer limit of the PTO's reissue authority under § 251, *i.e.*, the term of a reissued patent may not extend beyond that of the original. We therefore must determine the effect of Yamazaki's terminal disclaimer on the term of the original '991 patent for purposes of § 251. If, as Yamazaki argues, the terminal disclaimer merely shifted the '991 patent's expiration date within an "absolute" statutory term that extends to 2018, the PTO could reset the expiration date anywhere within that term through reissue without exceeding the term of the original '991 patent. On the other hand, if the terminal disclaimer defined the original '991 patent's term based on the expiration date of the '476 patent, any reissue of the '991 patent would be confined to that reduced term under § 251. We agree with the PTO and conclude that when the '991 patent issued with its terminal disclaimer in effect, that disclaimer became part of the original '991 patent and served to define its term, regardless of any further term that might have been otherwise available in the absence of the disclaimer.

To examine the effect of a terminal disclaimer on the term of an original patent, we turn first to 35 U.S.C.

§ 253, which governs both terminal disclaimers and subject-matter disclaimers. Section 253 states:

> Whenever, without any deceptive intention, a claim of a patent is invalid the remaining claims shall not thereby be rendered invalid. A patentee, whether of the whole or any sectional interest therein, may, on payment of the fee required by law, make disclaimer of any complete claim, stating therein the extent of his interest in such patent. Such disclaimer shall be in writing, and recorded in the Patent and Trademark Office; and it *shall thereafter be considered as part of the original patent* to the extent of the interest possessed by the disclaimant and by those claiming under him.
>
> *In like manner* any patentee or applicant *may disclaim or dedicate to the public the entire term, or any terminal part of the term, of the patent granted or to be granted.*

35 U.S.C. § 253 (2006) (emphases added).

Two aspects of § 253 are important to our analysis. First, the statute dictates that a terminal disclaimer is treated as part of the *original patent*—the same benchmark used to fix the maximum term for reissued patents in § 251. *See Vectra Fitness, Inc. v. TNWK Corp.*, 162 F.3d 1379, 1383 (Fed. Cir. 1998) ("The term 'original patent' is used in both sections 251 and 253; it cannot be presumed that the term has two different meanings in these closely related statutes."). More specifically, § 253 describes terminal disclaimers and disclaimers of patent claims in parallel, first describing subject-matter disclaimers and then instructing that terminal disclaimers

operate "[i]n like manner." Section 253 thus indicates that the provisions describing disclaimers of patent *claims*—including that such disclaimers "shall thereafter be considered as part of the original patent"—apply with equal force to disclaimers of patent *term*. As such, it is apparent that a terminal disclaimer's effects on patent term, whatever those effects might be, must apply to "the term of the original patent" as recited in § 251.

Next, because the disclaimer of any issued claim inheres in the original patent, we have interpreted § 253 to mean that after such disclaimer "the patent is treated as though the disclaimed claims never existed." *Vectra*, 162 F.3d at 1383 (citing *Guinn v. Kopf*, 96 F.3d 1419, 1422 (Fed. Cir. 1996)). We conclude that the same holds true for Yamazaki's disclaimer of patent term. If a patentee's post-hoc disclaimer of an issued patent claim applies as part of the "original patent" such that the disclaimed subject matter is treated as if it never existed, we see little reason why a terminal disclaimer filed *before* the issue date should not be afforded the same effect.

Our conclusion finds added support in other provisions of the Patent Act relating to patent term. *See United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371 (1988) (explaining that the use of the same term in related statutes clarifies the meaning of that term). For example, 35 U.S.C. §§ 155, 155A, and 156 codify additional mechanisms for varying the "term" of an "original patent" relative to that provided under § 154(a). *See, e.g.*, § 155 ("Notwithstanding the provisions of section 154, the term of a patent . . . shall be extended . . . and such [extension] shall be considered as part of the original patent . . . ."). To be sure, § 154(a) establishes a baseline term for original U.S. Patents, but Yamazaki's contention that § 154(a) provides the sole

basis for defining the "term" of a patent is undermined by the appearance of the same language in other statutes. Had Congress intended to distinguish the concept of patent "term" established in § 154(a) from the mechanisms for adjustment provided under §§ 155, 155A, 156, and 253, it surely could have done so—for example, by casting the latter statutes as affecting the *expiration date* rather than the *term* of affected patents. Instead, each of those statutes, like § 251, uses the word "term." To hold that § 251 uses "term" in a sense consistent with § 154(a) but distinct from §§ 155, 155A, 156, and 253 would be to endorse an untenable reading of the statutory scheme, which we decline to do.

We thus cannot agree with Yamazaki's view of patent term as an absolute, immutable statutory grant under § 154(a)—patent term calculations begin but do not necessarily end with that section. Various statutory devices, including a recorded terminal disclaimer, can redefine the term of an original patent. When a patent issues subject to a terminal disclaimer, the patentee therefore has not just agreed to forgo some amount of its enforceable term, but has in fact reduced the term itself by effectively eliminating the disclaimed portion from the original patent.

Accordingly, Yamazaki's terminal disclaimer eliminated any term from the original '991 patent beyond December 22, 2003. The intended and undisputed language of the terminal disclaimer tied the original term of the '991 patent to that of the commonly owned '476 patent, and there is no question that the '476 patent lawfully expired in 2003. Given the '991 patent's truncated term, the Board correctly recognized that reissue "never existed as a remedy to withdraw the terminal disclaimer." *Rehearing Decision*, 2011 WL 3605913, at *5. Once the '991

patent issued with the terminal disclaimer in place, and the terminal disclaimer consequently became part of the original patent, the PTO was foreclosed from later reissuing the patent for a term greater than that of the original '991 patent—in this case, for a term extending beyond December 22, 2003. Yet that is precisely the result Yamazaki sought to achieve. The PTO thus had no choice but to reject the Reissue Application, as the alternative would have contravened the express conditions of § 251.

In so holding, we recognize that the reissue statute "is remedial in nature, based on fundamental principles of equity and fairness, and should be construed liberally." *In re Weiler*, 790 F.2d 1576, 1579 (Fed. Cir. 1986). Yet "the remedial function of the statute is not without limits." *In re Serenkin*, 479 F.3d 1359, 1362 (Fed. Cir. 2007). In this case, the various delays Yamazaki experienced in prosecuting his reissue application,[3] while puzzling and undeniably unfortunate, had no effect on the eventual outcome because, as discussed, § 251 precluded the PTO from allowing the Reissue Application at any point during its pendency. *Cf. In re Orita*, 550 F.2d 1277, 1280–81 (CCPA 1977) (rejecting a reissue application as seeking a correction that would have offended statutory requirements). We are also unpersuaded that reissue is made appropriate by the PTO's failure to act on the Petition to Withdraw before the '991 patent issued in the first place. The PTO surely could have responded to the Petition to Withdraw—whether affirmatively or otherwise—in the 22

---

[3] Those delays included, among others, a wait of more than two years for the first office action after the reissue application was filed, a two-year delay between an in-person examiner interview and the next official action, and a delay of well over three years from the filing of Yamazaki's appeal brief until the Board issued its initial *Board Decision* in this case.

months between its filing and the issuance of the '991 patent. But Yamazaki was similarly inattentive. Yamazaki simply paid the issue fee upon receiving the PTO's Notice of Allowance and admittedly bypassed numerous opportunities to prevent the '991 patent from issuing with his petition still unresolved. *See supra* note 1. Yamazaki thus shares primary responsibility for allowing the '991 patent to issue with the terminal disclaimer in place—but again, once it did, reissue was unavailable to remove that disclaimer. In short, "[s]ection 251 is not a panacea designed to cure every mistake which might be committed by an applicant or his attorney, and the case at bar exemplifies a mistake which this section cannot cure." *Orita*, 550 F.2d at 1281.

Because we conclude that the PTO lacked the authority to nullify Yamazaki's terminal disclaimer through reissue proceedings at all times after issuance of the '991 patent, we need not reach and do not address the PTO's alternative assertion that the '991 patent's expiration during the long pendency of this reissue proceeding divested the PTO of any ability to grant the reissue.

CONCLUSION

We have considered the parties' remaining arguments and find them unpersuasive. Accordingly, we *affirm* the final judgment of the Board.

**AFFIRMED**