# United States Court of Appeals for the Federal Circuit

---

**JAPANESE FOUNDATION FOR CANCER RESEARCH,**
*Plaintiff-Cross-Appellant,*

**v.**

**MICHELLE K. LEE, Deputy Director, U.S. Patent and Trademark Office, in her official capacity as Deputy Under Secretary of Commerce for Intellectual Property** AND **UNITED STATES PATENT AND TRADEMARK OFFICE,**
*Defendants-Appellants.*

---

2013-1678, 2014-1014

---

Appeals from the United States District Court for the Eastern District of Virginia in No. 1:13-CV-00412-AJT-TRJ, Judge Anthony J. Trenga.

---

Decided: December 9, 2014

---

MICHAEL J. LOCKERBY, Foley & Lardner LLP, of Washington, DC, argued for plaintiff-cross-appellant.

ADAM C. JED, Attorney, Appellate Staff, Civil Division, United States Department of Justice, of Washington, DC, argued for defendants-appellants. With him on the brief were STUART F. DELERY, Assistant Attorney General,

DANA J. BOENTE, Acting United States Attorney; and NATHAN K. KELLEY, Solicitor, United States Patent and Trademark Office. Of counsel were MARK R. FREEMAN, Attorney, and DAVID MOSKOWITZ, United States Attorney's Office, of Alexandria, Virginia.

_____

Before PROST, *Chief Judge,* DYK and TARANTO, *Circuit Judges.*

PROST, *Chief Judge.*

The United States Patent and Trademark Office ("PTO") appeals from the decision of the United States District Court for the Eastern District of Virginia granting the Japanese Foundation for Cancer Research's ("the Foundation") cross-motion for summary judgment that the PTO acted arbitrarily and capriciously, and abused its discretion, when it refused to withdraw the terminal disclaimer on U.S. Patent No. 6,194,187 ("'187 patent"). For the reasons stated below, we reverse.

I

The '187 patent was issued and assigned to the Foundation on February 27, 2001. On October 11, 2011, the Foundation's attorney of record responsible for the prosecution of the '187 patent filed a statutory disclaimer pursuant to 37 C.F.R. § 1.321(a) with the PTO, disclaiming "the entire term of all claims in U.S. Patent 6,194,187" and requesting that the disclaimer be "duly recorded." J.A. 894. On December 13, 2011, the Foundation's attorney of record filed a petition under 37 C.F.R. § 1.182 to withdraw the statutory disclaimer. The petition indicated that the disclaimer "was not filed in the context of any litigation or an assertion of double patenting," and that the disclaimer had not yet been made public by either the Foundation or the PTO, as it had not yet been entered into the PTO's electronic Patent Application Information Retrieval ("PAIR") database or the paper prosecution file.

J.A. 900. The PTO issued a decision denying the Foundation's petition on January 17, 2012.

According to the PTO's decision, the petition indicated that the Foundation's filed disclaimer included all of the information as well as the fee required pursuant to 37 C.F.R. § 1.321(a). J.A. 928. The PTO also noted that "[t]here is no indication that the power of attorney was revoked or withdrawn," and thus the attorney of record "appears to be a proper party to file the statutory disclaimer." J.A. 928-29. The PTO explained that the statutory mechanisms available to correct a patent "are not available to withdraw or otherwise nullify the effect of a recorded terminal disclaimer," and that the PTO's established policy was to deny any "request to withdraw or amend a recorded terminal disclaimer in an issued patent on the grounds that the rules of practice and 35 U.S.C. § 253 do not include a mechanism for withdrawal or amendment of such a terminal disclaimer." J.A. 929. The PTO concluded by noting that even though the disclaimer had not been "fully processed" the "patent owner freely dedicated to the public the entire term" of all the patent's claims when the disclaimer was filed. *Id.*

The Foundation's terminal disclaimer subsequently appeared in the '187 patent's prosecution file on the electronic PAIR database. On February 27, the Foundation filed a petition under 37 C.F.R. §§ 1.182 and 1.183 asking the PTO to withhold publication of the terminal disclaimer in the *Official Gazette*, and indicating that it would file a request for reconsideration, which it filed on March 16. (The Foundation asked in the alternative for relief under 37 C.F.R. §§ 1.182 and 1.183 "to invoke the discretion of the director and suspend the rules."). In August, the Foundation's attorney of record met with the PTO and, following that meeting, filed a supplemental petition addressing its argument concerning whether the PTO had the inherent authority to grant the relief the Foundation requested.

The Foundation's March petition described what the Foundation characterized as "newly revealed information" and "newly discovered evidence." J.A. 976. This included signed declarations from a number of personnel associated with one of the '187 patent's Japanese licensees, Kyowa Hakko Kirin, Inc. ("KHK"), and KHK's Japanese patent counsel, Kyowa Law Group ("Kyowa Law").[1] According to the declarations and the Foundation's petition, the following series of events preceded the Foundation's attorney of record's filing of the statutory disclaimer.

First, on March 8, 2011, KHK's in-house counsel contacted a paralegal at Kyowa Law to inquire as to whether a patent may be abandoned or disclaimed before it lapsed because of non-payment of the next maintenance fee. The paralegal's declaration states that she contacted her "boss" and together they "conducted research which indicated that a disclaimer could be filed under U.S. statutory and regulatory provisions." J.A. 963. Then, the next day, March 9, the paralegal declares that she sent a letter by fax to the Foundation's attorney of record's law firm, Foley & Lardner LLP ("Foley"), which reads, in relevant part, as follows (below the subject line "Re: U.S. Patent No. 6,194,187" and dated March 9):

Dear Sirs:

Our clients would like to abandon the captioned patent positively and invalidate this patent before the case lapses by non-payment of the next maintenance fees, which will be due on August 27, 2012.

---

[1] Despite sharing the name "Kyowa," the licensee and its counsel are unrelated entities.

> Would you please let us have the necessary forms and/or information for the procedure of positive abandonment, preferably by March 15, 2011.

> We would appreciate your immediate reply by return facsimile.

J.A. 967. The paralegal's declaration further states that after the March 11 earthquake and subsequent tsunami in Japan, her work "reporting and following up the progress of the disclaimer was adversely affected by the long lasting irregular and abnormal situation after the Earthquake." J.A. 964. She explained this was why she did not send a copy of the March 9 letter to KHK or otherwise inform KHK of its contents. *Id.* Then, on October 11, the Foundation's attorney of record filed the terminal disclaimer at the PTO. The paralegal's declaration goes on to state that she received a copy of the filed terminal disclaimer from the Foundation's attorney of record on November 29, 2011, and then reported it to KHK. *Id.* The next day, she was informed by KHK instructing Kyowa Law to "urgently ask Foley to restore the patent." *Id.* (The Foundation's attorney of record subsequently filed the aforementioned December 2011 petition.)

The Foundation's petition also included a declaration from the Executive Director of the Foundation stating inter alia, that the Foundation neither requested nor authorized the disclaimer. J.A. 969. The petition also included a declaration from the individual "in charge of patents regarding biotechnology at KHK" stating that KHK did not have the authority to disclaim the patent, and that the declarant did not instruct nor authorize any action leading to the '187 patent's disclaimer. J.A. 970. The in-house patent counsel for KHK who originally communicated with the paralegal at Kyowa Law also provided a declaration, stating that the request was not for the disclaimer of the '187 patent but rather a question about "*whether* it was possible to actively disclaim a U.S.

patent, rather than allow it to lapse by non-payment of maintenance fees." J.A. 973.

The Foundation's March petition and August supplement argued that in light of the aforementioned "new and extraordinary facts," the disclaimer was erroneous and unauthorized, and, therefore, the PTO had the inherent authority to withdraw it. J.A. 982.

On February 22, 2013, the PTO issued a final agency decision denying the Foundation's petition. J.A. 990-1001 ("*Final Decision*").[2] The Foundation thereafter filed an action in district court appealing the PTO's decision under the Administrative Procedure Act ("APA"), 5 U.S.C. § 551. The PTO subsequently agreed to withhold publication of the '187 patent's disclaimer in the *Official Gazette*. In May, the PTO and the Foundation filed cross motions for summary judgment. The district court granted the Foundation's motion and denied the PTO's motion. It directed the PTO "to withdraw the disclaimer, absent a finding that the Foundation actually authorized its filing." *Japanese Found. for Cancer Research v. Rea*, No. 13-412, 2013 WL 3894156, at *10 (E.D. Va. July 26, 2013) ("*District Court Op.*").

The PTO appeals. The Foundation's APA claim raises "a substantial question under the patent law." *Helfgott & Karas, P.C. v. Dickinson*, 209 F.3d 1328, 1334 (Fed. Cir. 2000). Accordingly, we have jurisdiction under 28 U.S.C. § 1295(a)(1).

---

[2]   The final agency decision, as well as all the various petitions and filings concerning the '187 patent, is contained in the prosecution file, which is available on the Internet through the PTO's electronic PAIR database at http://portal.uspto.gov/pair/PublicPair.

## II

We review the district court's grant of summary judgment de novo, applying the same standard as the district court. *Arnold P'ship v. Dudas*, 362 F.3d 1338, 1340 (Fed. Cir. 2004). Under the APA, we set aside an agency's action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).[3] "Under the arbitrary and capricious standard the scope of review is a narrow one." *Bowman Transp., Inc. v. Ark.-Best Freight Sys., Inc.*, 419 U.S. 281, 285 (1974). In particular, "the court is not empowered to substitute its judgment for that of the agency." *Id.* To the extent that the PTO's decision relied on statutory interpretation, "[t]his court reviews questions of statutory interpretation without deference." *Liesegang v. Sec'y of Veterans Affairs*, 312 F.3d 1368, 1372 (Fed. Cir. 2003). An agency abuses its discretion "where the decision is based on an erroneous interpretation of the law." *Burandt v. Dudas*, 528 F.3d 1329, 1332 (Fed. Cir. 2008). Otherwise, an agency acts arbitrarily or capriciously only if the decision was not based on the relevant factors or it fails to "examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29 (1983).

---

[3] The Foundation argues that the PTO's decision should be reviewed under an "abuse of discretion" standard that is somehow less deferential than "arbitrary and capricious." However, we generally review agency decisions pursuant to the APA § 706(2)(A) using the terms "abuse of discretion" and "arbitrary and capricious" interchangeably, as indicated by the plain text of the statute. *See, e.g.*, *Helfgott*, 209 F.3d at 1334-35.

A

On appeal, the Foundation argues that the PTO has the authority to issue a certificate of correction for the '187 patent to withdraw the terminal disclaimer under the statute that governs such certificates, 35 U.S.C. § 255. This statutory section provides that a certificate of correction may be issued "[w]henever a mistake of a clerical or typographical nature, or of minor character, which was not the fault of the Patent and Trademark Office, appears in a patent and a showing has been made that such mistake occurred in good faith . . . if the correction does not involve such changes in the patent as would constitute new matter or would require re-examination." 35 U.S.C. § 255.

The Foundation did not ask for relief pursuant to § 255 in its petition to the PTO. However, it argues that it did not waive this ground for relief because it would have been futile to raise it, due to the PTO's established policy. In particular, the Manual of Patent Examining Procedure (MPEP) provides that "[a] mistake in filing a terminal disclaimer does not fall within any categories of mistake for which a certificate of correction of applicant's mistake is permissible." MPEP § 1490.

In support of its position that § 255 is available as a mechanism for withdrawing a mistakenly filed terminal disclaimer, the Foundation cites the disclaimer at issue in *Carnegie Mellon Univ. v. Schwartz*, 105 F.3d 863 (3d Cir. 1997). *Carnegie Mellon*, which was a malpractice case, describes the circumstances by which the patentee's attorney of record mistakenly entered the serial number and filing date of an issued patent, rather than the application for which he had intended to file a disclaimer, and filed it with the PTO. *Id.* at 865. The PTO subsequently granted his petition to withdraw the disclaimer and issued a certificate of correction, indicating that all references to the disclaimer in the notice of disclaimer at-

tached to the patent and published in the *Official Gazette* should be deleted. *Id.*; *see also* U.S. Patent No. 4,767,708. The Foundation argues that the facts of *Carnegie Mellon* indicate that a certificate of correction may be used to effect the withdrawal of a terminal disclaimer on an issued patent and, moreover, that its filing of the disclaimer on the '187 patent analogously represented a "clerical or typographical error" that occurred in "good faith" as required by § 255.

As an initial matter, the PTO's policy in fact does acknowledge the possibility of correcting a terminal disclaimer in the scenario that the Foundation argues was described in *Carnegie Mellon*. To wit:

> Where a terminal disclaimer was submitted to overcome a nonstatutory double patenting rejection (made during prosecution of an application which has now issued as a patent), and the numbers for the patent being disclaimed in the terminal disclaimer were inadvertently transposed (e.g., 6,444,316 written as 6,444,136), a petition under 37 CFR 1.182 may be filed to *withdraw the terminal disclaimer* with the incorrect (transposed) patent number (recorded in the issued patent), and replace it with a corrected terminal disclaimer having the correct patent number. In this instance, the inadvertency is clear from the record.

MPEP § 1490 (emphasis added). This paragraph follows a description of the related situation in which a terminal disclaimer identifies "the wrong target application or patent," and in which the PTO undertakes an office action that "make[s] it clear that 'the second terminal disclaimer replaces the first terminal disclaimer, and the first terminal disclaimer is thus void.'" *Id.*

Indeed, the PTO's decision on the Foundation's petition noted this rule of practice, contrasting it with the

Foundation's request to simply withdraw a recorded disclaimer on an issued patent. *Final Decision* at 6, n.4.[4] Importantly, in the hypothetical scenarios described in the MPEP, the patentee sought to file a terminal disclaimer but indicated the wrong target patent or application. The *Carnegie Mellon* disclaimer, for example, indicated the number of a patent that was related to the patent application that was the intended target. *Carnegie*, 105 F.3d at 865. There, the relief accorded by the PTO only nullified the terminal disclaimer on the wrongly identified patent, while then enforcing the terminal disclaimer on the intended patent or application. Here, the Foundation has not identified an error in the patent number or application that is apparent on its face—like a transposed number or the number of a related patent—which would entail redirecting the disclaimer to the correct target. It instead claims that the filing of the disclaimer was itself the "clerical or typographical error" that may be corrected under § 255.

The Foundation's argument here is that, first, "clerical or typographical error" in the statute should be read disjunctively, such that § 255 is operative where there is a "clerical error." Second, the Foundation argues that since the terminal disclaimer was filed due to the mistake of

---

[4]   During oral argument, the PTO's counsel suggested that the *Vectra* decision, which issued after *Carnegie Mellon* and emphasized the importance of the "finality and certainty" of disclaimers as filed, called into question whether a certificate of correction may still be available under these circumstances. *See Vectra Fitness, Inc. v. TNWK Corp.*, 162 F.3d 1379, 1383 (Fed. Cir. 1998) ("This court has interpreted the term 'considered as part of the original patent' in section 253 to mean that the patent is treated as though the disclaimed claims never existed."); *accord Guinn v. Kopf*, 96 F.3d 1419, 1422 (Fed. Cir. 1996).

Kyowa Law's paralegal, the mistaken filing constitutes a "clerical error" because she was a clerical employee performing clerical work. This reading of the statute is not only strained but also lacks support in case law, including those cases cited in the Foundation's briefing.

The Foundation argues that in our previous decision interpreting "clerical or typographical error" in § 255, we defined "clerical" as "relating to an office clerk or office work" and "typographical" as "relating to the setting of type, printing with type, or the arrangement of matter printed from type." *Superior Fireplace Co. v. Majestic Prods. Co.*, 270 F.3d 1358, 1369-70 (Fed. Cir. 2001). However, in that case, while we noted these separate definitions, we went on to interpret the combined phrase as a whole within the context of § 255, holding that "clerical or typographical mistakes are generally understood to include simple mistakes such as obvious misspellings that are immediately apparent." *Id.* An erroneous identification of a patent number, as in *Carnegie Mellon*, represents the outer edge of such an error, in which a patent application number was transposed with a related patent number. However, this definition of "clerical or typographical error" applies only to an error that appears on the face of the document, as opposed to the filing of the document itself.

To further support its reading of "clerical error," the Foundation points to our interpretation of the term in the context of 19 U.S.C. § 1520(c)(1), a provision involving refunds of customs duties and fines from the U.S. treasury. In that context, we held that a "clerical error" arises when a subordinate acts contrary to binding instructions, distinguishing the subordinate from one whose duty involves exercising "original thought or judgment." *Ford Motor Co. v. United States*, 157 F.3d 849, 860 (Fed. Cir. 1998). Setting aside whether this reading would apply to Kyowa Law's paralegal, the terminal disclaimer in this case was actually filed by the Foundation's attorney of

record. Indeed, the PTO's rules require that terminal disclaimers be signed by "the patentee, or an attorney or agent of record." 37 C.F.R. § 1.321(a)(1). Therefore, even if the Foundation's reading of "clerical error" was correct, it would be impossible for a subordinate who lacks the duty of exercising judgment to file a valid terminal disclaimer on his own.

In sum, there is no basis for withdrawing the terminal disclaimer on the '187 patent by means of a certificate of correction under § 255.[5]

B

The Foundation also argues, as the district court held, that the PTO has the inherent authority to withdraw a mistakenly filed terminal disclaimer and should have exercised its discretion to do so here.

As an initial matter, the Foundation argues that the PTO erred by failing to account for the fact that the terminal disclaimer was not yet recorded, because it had not been placed in the '187 patent's paper or electronic prosecution file at the time of its first petition, nor was it published in the *Official Gazette*. The Foundation submits that this is important because the statute governing patent disclaimers provides that a "disclaimer shall be in writing, and *recorded* in the Patent and Trademark Office." 35 U.S.C. § 253 (emphasis added). However, we have held that "nothing in the statutes or regulations requires any action by the PTO for a disclaimer to be 'recorded.'" *Vectra Fitness, Inc. v. TNWK Corp.*, 162 F.3d 1379, 1382 (Fed. Cir. 1998). Therefore, a disclaimer is considered to be "recorded" on the date that it was filed, as long as it was "received by the PTO in proper form and

---

[5] The district court also agreed with the PTO that § 255 did not authorize the disclaimer's withdrawal. *See District Court Op.*, 2013 WL 3894156, at *7 n.12.

with the appropriate filing fee," regardless of any delay in its processing by the PTO. *Id.* The Foundation attempts to limit *Vectra* to its facts because, in that case, the patentee was seeking to reissue broad patent claims that were previously disclaimed, which we noted "would negate the finality and certainty of the disclaimer." *Id.* at 1384. But we did not so limit our holding in *Vectra.* Rather, we squarely indicated that our conclusion was based on interpreting the text of § 253 and 37 C.F.R. § 1.321, the regulation that sets forth the requirements for a terminal disclaimer to be recorded. *Id.* at 1382. Therefore, whether the PTO had finished processing the '187 patent's disclaimer before the Foundation's petition has no bearing on whether the PTO could or should have withdrawn it.

The first question, then, is the scope of the PTO's authority, if any, to withdraw an effectively recorded disclaimer. We have held that "administrative agencies possess inherent authority to reconsider their decisions, subject to certain limitations, regardless of whether they possess explicit statutory authority to do so." *Tokyo Kikai Seisakusho, Ltd. v. United States*, 529 F.3d 1352, 1360 (Fed. Cir. 2008). This principle is reflected in the PTO's regulations that allow the review of petitions in "situations not specifically provided for" in its regulations and, moreover, provide that "any requirement of the regulations in part which is not a requirement of the statutes" may be waived "[i]n an extraordinary situation." 37 C.F.R. §§ 1.182, 1.183. Indeed, the Foundation petitioned the PTO for relief pursuant to these regulations.

The PTO's denial of the Foundation's petition expressed its position that, as to terminal disclaimers recorded under § 253, there was no administrative determination for it to reconsider. *Final Decision*, at 7. According to the PTO, the only "determination" is whether the disclaimer satisfied the requirements of 37 C.F.R. § 1.321(b), i.e., was signed by the applicant or an attorney

or agent of record, stated the applicant's ownership inter-
est and what portion of the term was being disclaimed,
and was accompanied by a fee. Indeed, the PTO indicated
that it found that these requirements were met when it
denied the Foundation's initial petition. J.A. 928-29. In
that sense, the PTO already reviewed its determination
that the terminal disclaimer was valid.

The district court, however, held that as the PTO re-
ceives disclaimer filings and is responsible for placing
them in the public record, the PTO has the inherent
authority to reconsider whether it should have filed an
unauthorized terminal disclaimer. *District Court Op.*,
2013 WL 3894156, at *8. The district court also noted
that during its hearing, the PTO "appeared to concede
that it had inherent discretionary authority to withdraw a
fraudulently filed disclaimer but not an unauthorized
one." *Id.* at *8 n.15. However, it is also not our place to
define what hypothetical circumstances might allow or
require the PTO's action, where those circumstances are
not at issue here. The PTO has sufficiently stated its
reasoning that, in this case, the existence of a mistake by
an attorney other than the type falling under § 255 or a
lack of actual authority from a client should not result in
the withdrawal of the terminal disclaimer. *See SEC v.
Chenery Corp.*, 332 U.S. 194, 196 (1994). The PTO need
not articulate what other circumstances would warrant
such withdrawal.

In its decision, the PTO provided reasons for refusing
to withdraw the '187 patent's disclaimer in this case,
"*assuming arguendo* that the decision to enter or not
enter the disclaimer was subject to reconsideration."
*Final Decision*, at 8. Though this section of its decision
was styled as an alternative basis for rejecting the Foun-
dation's petition, "we will uphold a decision of less than
ideal clarity if the agency's path may reasonably be dis-
cerned." *Bowman Transp.*, 419 U.S. at 285-86; *see also
Casino Airlines, Inc. v. Nat'l Transp. Safety Bd.*, 439 F.3d

715, 717 (D.C. Cir. 2006) (sustaining an agency decision as long as at least one of multiple grounds is valid and the agency would have acted on that ground even if others were unavailable). The PTO provided two reasons for declining to withdraw the terminal disclaimer. First, the PTO determined that, once the disclaimer was filed, the public may have relied on it, and the PTO "does not determine on an *ad hoc* basis whether the public has actually relied on such filing." *Final Decision*, at 8. Second, the PTO held that it "is not the proper forum for resolving the issue of whether the disclaimer was filed per the intentions of the patentee," on the basis of its position that "miscommunications between attorneys and clients do not excuse the actions of the representative." *Id.* at 9.

With respect to the first ground of the PTO's decision, the Foundation argues that the public did not rely on the '187 patent's disclaimer. In the Foundation's view, although by the time of the PTO's final decision the disclaimer did appear in the patent's prosecution file and online, the public was nevertheless on notice that its validity was in question. The Foundation's position appears to be based on the fact that the Foundation's own petitions also appeared in the file, in which it contested the disclaimer. However, nothing in the file actually indicated that the *PTO* had any doubt about the disclaimer's validity. The lack of publication in the *Official Gazette* is also unavailing, given that the prosecution file is freely accessible on the Internet. That said, even if we gave the Foundation the full benefit of its argument, the PTO's other ground for denying the petition suffices to sustain its decision.

In this case, the Foundation has alleged that its attorney of record filed the disclaimer because of miscommunications between the Foundation, KHK, Kyowa Law, and Foley. The PTO declined to delve into the record and evaluate the merits of the Foundation's assertion. The PTO instead determined that it need not examine alleged

miscommunications between the patentee and its attorney of record because of the principle that it holds the patentee to be "bound by the actions or inactions of his voluntarily-chosen representative." *Final Decision*, at 9. The PTO, apart from a clerical error under § 255, ends its inquiry into attorney authorization once it determines that the attorney of record signed the disclaimer, as required by regulation.

The Foundation suggests that it should not be bound to the consequences of its attorney of record's actions, as it resulted in the loss of a valuable property right. It analogizes, as the district court did, to the principle that an attorney cannot settle a case or waive certain rights without the client's authorization in the context of ordinary representation. *See District Court Op.*, 2013 WL 3894156, at *6. The PTO has, however, clearly articulated in its regulations that, other than the patentee, only the attorney of record with power of attorney is authorized to file a terminal disclaimer on the patentee's behalf. *See* 37 C.F.R. § 1.32. And here, the patentee provided specific authority to its attorney to file a disclaimer by filing a power of attorney to prosecute the underlying application and to transact all business in the PTO connected therewith. J.A. 199. Even if we disagreed with the PTO's position as a matter of policy, we must not substitute our own judgment for that of the agency because "[unless] these vital differentiations between the functions of judicial and administrative tribunals are observed, courts will stray outside their province and read the laws of Congress through the distorting lenses of inapplicable legal doctrine." *FCC v. Pottsville Broad. Co.*, 309 U.S. 134, 144 (1940). We must defer to the agency's interpretation of its own procedures and regulations, and this case does not indicate the kind of "extremely rare circumstances" that could "justify a court in overturning agency action because of a failure to employ procedures beyond those required by the statute." *Vt. Yankee Nucle-*

*ar Power Corp. v. Natural Res. Def. Council, Inc.*, 435 U.S. 519, 524, (1978).[6]  Here, the PTO determined that miscommunications between the Foundation and its attorney of record did not excuse the actions of the attorney, and we will not substitute our judgment for that of the agency. *State Farm*, 463 U.S. at 30.

Therefore, we find that the PTO did not act arbitrarily, act capriciously, or abuse its discretion in declining to use any inherent authority that it might have in withdrawing the terminal disclaimer on the '187 patent that the Foundation's attorney of record duly filed in accordance with the PTO's regulations.

## III

For the aforementioned reasons, we reverse the district court's grant of the Foundation's motion for summary judgment and denial of the PTO's motion for summary judgment, and, accordingly, we vacate the district court's order that the PTO conduct additional proceedings and withdraw the terminal disclaimer on the '187 patent from the public record.

**REVERSED AND VACATED**

---

[6]  The district court suggests that the "PTO is the Foundation's only source of adequate relief." *District Court Op.*, 2013 WL 3894156, at *9.  We note that in circumstances where a client may be deprived of a claim based on its attorney's conduct, and the facts indicate that the "attorney's conduct falls substantially below what is reasonable under the circumstances, the client's remedy is against the attorney in a suit for malpractice." *Link v. Wabash R.R. Co.*, 370 U.S. 626, 634, n.10 (1962).